**Ruth STEWART, et al.,
Plaintiffs-Appellants,**

v.

**Joseph HANNON, et al.,
Defendants-Appellees.**

No. 81–1682.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 6, 1981.

Decided April 5, 1982.

As Amended on Denial of Rehearing
and Rehearing En Banc
June 8, 1982.

Michael H. Slutsky, Cotton, Watt, Jones, King & Bowlus, Chicago, Ill., for plaintiffs-appellants.

Robert J. Krajcir, Chief of Appeals and Review Div., Law Dept. of Bd. of Ed., Chicago, Ill., for defendants-appellees.

Before BAUER and CUDAHY, Circuit Judges, and BAKER,* District Judge.

BAKER, District Judge.

This is an appeal from an order of the district court denying the plaintiffs attorneys' fees under Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) and under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988.

In this civil rights action filed in August, 1974, the plaintiffs sought to enjoin the defendants from administering an assistant principal examination, claiming that racial and ethnic discrimination existed in the test and excluded the plaintiffs from positions as principals. The district court dismissed the case and that order was appealed. While the case was pending on appeal the defendants withdrew the questioned examination and the appeal was dismissed as moot. *Stewart v. Hannon*, No. 80–1854 (7th Cir. Nov. 12, 1980) (order dismissing appeal as moot without prejudice to plaintiffs seeking attorneys' fees in the district court).

On return to the district court, Judge Leighton refused to award the plaintiffs fees because they were not prevailing parties. We affirm.

* Honorable Harold A. Baker, District Judge for the Central District of Illinois, sitting by desig-

nation.

I.

The plaintiffs are the Chicago High School Assistant Principals' Association and seven of its members who are certified teachers employed as assistant principals and who have unsuccessfully sought appointment to the position of principal in the Chicago public schools. Of the seven individual plaintiffs, five are black, one is Hispanic, and one, the plaintiff Ruth Stewart, is white.

The defendants are: members of the Board of Examiners of the Chicago Public School System, members of the Chicago Board of Education, and Education Testing Service, a not-for-profit New Jersey corporation, engaged in the business of educational and occupational test development and administration.

The plaintiffs first filed suit in August, 1974, claiming racial discrimination in the selection of Chicago school principals in violation of 42 U.S.C. §§ 1981, 1983, and 1985. In April, 1978, the plaintiffs amended their complaint to include Count II under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Count III, a pendent state law claim. For relief, the amended complaint, in addition to damages and attorneys' fees, sought to enjoin the defendants from administering the 1978 Principals' Examination.

In June, 1978, by stipulation, the parties agreed that the Board of Education should proceed with the administration of the 1978 examination as scheduled. The plaintiffs withdrew their motion to enjoin the administration of that examination in exchange for which the Board of Education agreed to provide the plaintiffs with the test results within ten days of their receipt from Education Testing Service. The parties further agreed that the test results could not be used for thirty days after their receipt by the plaintiffs.

Upon receipt, preliminary results of the examination showed that the test had an

adverse impact on the basis of race in excess of the "eighty percent rule"[1] as adopted by the Equal Employment Opportunities Commission, the Civil Service Commission, the Department of Labor, and the Department of Justice. Because the preliminary test results indicated a violation of the federal guideline, the defendants did not release the test results.

On February 2, 1979, on the defendants' motion, the district court dismissed the amended complaint with prejudice on the grounds that the plaintiffs had failed to state a cause of action upon which relief could be granted. *Stewart v. Hannon*, 469 F.Supp. 1142 (N.D.Ill.1979). On May 24, 1979, however, the district court granted the plaintiffs' motion for reconsideration with respect to the local defendants, ordered the defendants to provide the plaintiffs with the results of the 1978 examination pursuant to the order of June 23, 1978, and granted the plaintiffs leave to submit a proposed amended Count II based on the 1978 test results. The defendants provided the plaintiffs with the test results as ordered. On May 19, 1980, the district court vacated its earlier order granting the plaintiffs leave to submit an amended Count II and dismissed the suit because the plaintiffs lacked standing and because the amended Count II was not ripe for judicial determination. *Stewart v. Hannon*, No. 74 C 2466 (N.D.Ill. May 19, 1980). The plaintiffs filed a timely appeal which was dismissed as moot since the defendants had adopted a formal resolution not to utilize the results of the 1978 examination. However, the appeal was dismissed "without prejudice to plaintiffs-appellants seeking attorneys' fees in the district court." *Stewart v. Hannon*, No. 81–1682 (7th Cir. Nov. 12, 1980).

On December 17, 1980, subsequent to the dismissal of the appeal, the plaintiffs filed their petition for the award of attorneys' fees in the district court urging that they had achieved a successful outcome in the litigation. The district court held that the plaintiffs were not "prevailing parties" and therefore not entitled to fees on alternate grounds: first, the court lacked jurisdiction to consider the merits of amended Count II because the plaintiffs lacked standing to sue and their claim was not ripe for adjudication; and second, even assuming the cause was justiciable, the plaintiffs were not "prevailing parties" under the standards articulated by this court in *Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979).

## II.

The first question that confronts us is one of justiciability. In denying the plaintiffs an award of attorneys' fees, the district court specifically held that the plaintiffs were not prevailing parties because the controversy was not ripe and the plaintiffs lacked standing. Other federal courts have similarly concluded that a plaintiff cannot be a prevailing party where the district court has no jurisdiction. *See Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (6th Cir. 1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979); *Richardson v. Wiley*, 569 F.2d 140, 143 (D.C.Cir.1977).

The district court's memorandum order of May 19, 1980, concluded that the plaintiffs lacked standing because the only plaintiff, Ruth Stewart, who had a right to sue letter issued by the Equal Employment Opportunity Commission (EEOC), was white and, therefore, was not an aggrieved party to the racial discrimination claim. The Supreme Court decision of *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), casts doubt on the district court's ruling.

In *Trafficante*, two tenants of an apartment complex, one white, one black, filed complaints under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, alleging housing discrimination against non-whites. The Supreme Court held that

---

1. The Uniform Guidelines on Employee Selection Procedures (1978) 29 C.F.R. § 1607.4(D) (1981), provide that "[a] selection rate for any race, sex, or ethnic group which is less than four-fifths (⅘) (or eighty percent) of the rate of the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact...."

the definition of "person aggrieved," 42 U.S.C. § 3610(a), showed a congressional intent to define standing as broadly as Article III of the Constitution permits and that the white tenants had suffered a cognizable injury in "the loss of important benefits from interracial associations" resulting from the "exclusion of minority persons from the apartment complex." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209–10, 93 S.Ct. 364, 366–67, 34 L.Ed.2d 415 (1972).

A similar analysis of standing should hold true under Title VII which, like Title VIII, has the purpose of outlawing discrimination based on race, religion, national origin, and sex. First, the applicable statutory language is similar. Section 706(b) of Title VII, 42 U.S.C. § 2000e–5(b), requires the filing of charges with the EEOC by a "person claiming to be aggrieved." Section 810(a) of Title VIII, 42 U.S.C. § 3610(a), provides for the filing of charges with the Secretary of Housing and Urban Development (HUD) by a "person aggrieved." Second, the enforcement procedures are nearly identical. Although Title VII provides additionally for public enforcement of the Act by the EEOC, that enforcement power was added to expand coverage of and increase compliance with the Act, and not to narrow the class of complainants. *See* H.R.Rep.No. 92–238, 92d Cong., 1st Sess. 3, *reprinted in* [1972] U.S. Code Cong. & Ad. News 2139. Third, in holding that the "person aggrieved" language of Section 810 of Title VIII showed a congressional intent to define standing under Title VIII as broadly as the Constitution permits, the Court in *Trafficante* cited with approval *Hackett v. McGuire Bros., Inc.*, 445 F.2d 442 (3d Cir. 1971). That case construed the "person claiming to be aggrieved" language of Section 706 of Title VII of the 1964 Civil Rights Act as showing a congressional intent to define standing under Title VII of the Act as broadly as permitted by Article III of the Constitution. Finally, the EEOC has interpreted the standing provisions of Title VII to permit a white person, aggrieved by discrimination against black persons at their place of work, to file charges with the EEOC and to sue in court. EEOC Decision No. 72–0591 (1971), CCH EEOC Decisions (1973) ¶ 6314 at 4562, 4564; EEOC Decision No. 71–969 (1970), CCH EEOC Decisions (1973) ¶ 6193 at 4328, 4329; EEOC Decision No. 70–09 (1969), CCH EEOC Decisions (1973) ¶ 6026 at 4049. Although the EEOC interpretations are not controlling, they are entitled to deference. *General Electric Co. v. Gilbert*, 429 U.S. 125, 141–46, 97 S.Ct. 401, 410–13, 50 L.Ed.2d 343 (1976).

Three other federal circuits have applied a similar analysis to Title VII and have held that a white plaintiff has standing to sue to enjoin discrimination against nonwhite groups. Following *Trafficante*, the Ninth Circuit held:

[I]nterpersonal contacts—between members of the same or different races—are no less a part of the work environment than of the home environment. Indeed, in modern America, a person is as likely, and often more likely, to know his fellow workers than the tenants next door or down the hall. The possibilities of advantageous personal, professional or business contacts are certainly as great at work as at home. The benefits of interracial harmony are as great in either locale. The distinction between laws aimed at desegregation and laws aimed at equal opportunity is illusory. These goals are opposite sides of the same coin.

*Waters v. Heublein, Inc.*, 547 F.2d 466, 469 (9th Cir. 1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); *accord, EEOC v. Mississippi College*, 626 F.2d 477, 482 (5th Cir. 1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981); *EEOC v. Bailey Co.*, 563 F.2d 439, 451–54 (6th Cir. 1977), *cert. denied*, 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978).

The district court's order of May 12, 1980, distinguished this case from *Trafficante* because Ruth Stewart had failed to allege that the discrimination deprived her of the benefits of an integrated working environment. Such a failure was not fatal. It is well established that a complaint should not be dismissed "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Although the specific injury was not pleaded, the complaint alleged that the plaintiff worked in an environment which was subject to racial discrimination. Since the exclusion of minority persons from a work environment can lead to the loss of important benefits from interracial associations, the complaint sufficiently apprised the parties and the court of the claimed injury. No more was required. *See Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364, 366, 34 L.Ed.2d 415 (1972); *see also Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). In light of the foregoing authorities, the district court was in error in finding that Ruth Stewart was not "a person aggrieved" within the meaning of the statute.

■ In denying an award of attorneys' fees the district court also relied on its prior ruling that the issues raised by the plaintiffs were not ripe for adjudication due to the tentative nature of the test results. "Since defendants could yet decide to weigh the questions differently, to change the cut-off score, to weight [sic] the written exam differently as a factor in the hiring process, or to otherwise alter the scores and their use, there are as yet simply no final examination results." *Stewart v. Hannon*, No. 74 C 2466 (N.D.Ill. May 19, 1980).

Certainly by May, 1980, when amended Count II was before the district court, a case or controversy existed between the parties. Because the plaintiffs would have sustained immediate injury from the application of the disputed examination results and because that injury would have been redressed by the relief requested, the requirement of ripeness was satisfied. *See Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978).

### III.

■ We turn then to the district court's alternative basis for refusing attorneys' fees to the plaintiffs. Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), and the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, allow for the recovery of attorneys' fees and costs by prevailing parties in suits brought under Title VII and under the Civil Rights Act of 1866 and 1871, 42 U.S.C. §§ 1981, 1983. The applicable sections of those Acts provide that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. §§ 1988, 2000e–5(k). The statutory purpose of the provisions is to promote private enforcement of the Civil Rights Acts. S.Rep.No. 94–1011, 94th Cong. 2d Sess. 5, *reprinted in* [1976] U.S. Code Cong. & Ad. News 5908, 5912.

Although the statutory language makes the award of attorneys' fees discretionary, the general rule which has developed indicates that the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). That statement was further explained in N.Y. *Gaslight Club, Inc. v. Kerry*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980):

> [I]t is clear that one of Congress' primary purposes in enacting . . . [Section 706(k)] was to 'make it easier for a plaintiff of limited means to bring a meritorious suit.'. . . Because Congress has cast the Title VII plaintiff in the roll of 'a private attorney general,' vindicating a policy 'of the highest priority,' a prevailing plaintiff 'ordinarily is to be awarded attorney's fees in all but special circumstances.' [Citations omitted.] It is clear that Congress intended to facilitate the bringing of discrimination complaints.

447 U.S. at 63, 100 S.Ct. at 2030.[2]

This court has interpreted *Newman* and the applicable legislative history to indicate

---

**2.** Congress intended to use the same standard

under § 1988 as applies under Title VII. The

that "[a] prevailing plaintiff in a § 1983 action should receive fees almost as a matter of course. . . ." *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir.), *cert. denied*, 50 U.S.L.W. 3278 (Oct. 13, 1981) (quoting *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978)). Of course, these liberal standards presuppose that one is a "prevailing party." We recognize that to be a "prevailing party" within the meaning of the statutory language does not require a judicial determination that the plaintiffs' rights have been violated and, therefore, that plaintiffs may prevail without formally obtaining relief. *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

The standard applicable in this case is whether the plaintiffs have prevailed in a "practical sense." *Dawson v. Pastrick*, 600 F.2d 70, 78 (7th Cir. 1979). In *Dawson* this court identified two criteria for determining whether a party is to be considered a prevailing party for the purposes of awarding attorneys' fees: (1) whether the litigation benefited the plaintiff and members of the class, and (2) whether the lawsuit acted as a catalyst, or was a material factor in the defendant's decision to change the disputed practices and therefore provide, in substantial part, the relief sought. *Id.* at 79. This standard requires that the circumstances of each case be individually considered. *Id.* at 79, n.13. Whether benefits flowed from the litigation and whether the litigation was a catalyst or material factor in producing benefits are fact questions to be determined by the district court.

In its memorandum order of April 8, 1981, denying the award of fees, the district court concluded that it was "questionable whether the plaintiffs' claims were the cat-alyst in the Board of Examiners' decision not to use the 1978 examination results, since, upon receiving the results, the defendants themselves realized that they showed an adverse impact on the basis of race." Appellants' Supplemental Appendix at S.26, *quoting Stewart v. Hannon*, No. 74 C. 2466 (N.D.Ill. April 8, 1981).

What prompted the defendants to abandon the use of the 1978 test results was a question of fact for the court to determine from all the circumstances of the case. The defendants claimed that the decision not to use the 1978 examination results was independent of the pending litigation. There was evidence that the overriding reason for giving the 1978 examination was to achieve a better racial balance of eligible principals. Therefore, upon receiving notice that the test results were in conflict with the EEOC "eighty percent rule," the defendants independently rejected the results. After the formal resolution to abandon the test results was issued, the defendants mailed to each candidate a written explanation citing the following reasons for abandonment: (a) current financial conditions of the Chicago Public Schools; (b) declining student enrollment; (c) consolidation and closing of schools; (d) change in the compulsory retirement age from sixty-five to seventy; and (e) less need for replacements for absenteeism due to changes in legislation.[3] The defendants made no reference to the pending litigation.

There was some conflicting evidence in the form of a letter from the defendant, Morton Elenbogen, Vice Chairman of the Board of Examiners, to each candidate which referred to the "existing litigation."[4] However, the weight to be given the evi-

---

Senate Report on the 1976 amendment to § 1988, stated that "[i]t is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by [§ 1988], if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" S.Rep.No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S. Code Cong. & Ad. News 5908, 5912 (quoting *Newman v. Piggie Park*

Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

3. Letter from Chicago Board of Education, Board of Examiners to principal candidates (1978), *reprinted in* Appellees' Supplemental Appendix at DSA 26.

4. Letter from Morton Elenbogen to principal candidates (September 29, 1978), *reprinted in* Appellants Supplemental Appendix at S.10.

dence and the credibility to be assigned to the conflicting positions of the parties were matters to be determined by the district court. *Saltzman v. Fullerton Metals Co.*, 661 F.2d 647, 649 (7th Cir. 1981).

There is sufficient evidence in the record to support the district court's findings and the district court's finding that the plaintiffs were not prevailing parties is not clearly erroneous. *Id.* at 649.

For the reasons advanced, the order of the district court denying an award of attorneys' fees and costs to the plaintiffs is affirmed.