Mary Ann ALLEN, et al., Plaintiffs,

v.

AMERICAN HOME FOODS, INC., et al., Defendants.

No. S85–516.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 14, 1986.

Renate Klass, Bruce A. Miller, Southfield, Mich., Kevin Likes, Auburn, Ind., for plaintiffs.

Martin W. Kus, LaPorte, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

### I. Facts Relevant to the Motions

This action arises out of a decision by American Home Foods, Inc. and American Home Products Corp. [hereinafter jointly referred to as "American Home"] to close their LaPorte, Indiana, plant and terminate all of its LaPorte employees. On January 20, 1984, American Home notified all employees at that plant, in writing, that due to a decrease in demand for products manufactured in LaPorte, the company was trying to decide whether to close the LaPorte plant permanently and transfer the work done in LaPorte to another site, or to close another plant and consolidate the work in LaPorte.

American Home decided to close the LaPorte plant and so notified all of its LaPorte employees in writing on February 21, 1984. American Home later negotiated a closure agreement with the United Steel Workers of America, AFL–CIO–CLC, Local Union No. 14000, of LaPorte, Indiana (hereinafter "union"), the sole and exclusive bargaining agent for most of the LaPorte plant employees. That agreement provided for severance allowance, settlement of outstanding grievances, pension benefits, pension rights, group insurance benefits, and termination of the controlling collective bargaining agreement.

On September 17, 1985, fifty-one of American Home's LaPorte employees filed this lawsuit. Their complaint alleges that among the significant and determinative factors American Home considered when deciding to close the LaPorte plant and transfer the work to another plant were (1)

the predominance of women in the LaPorte plant as compared to all the American Home plants, and (2) the predominance at the LaPorte plant, as compared to all other American Home plants, of older workers whose pension rights were near vesting.

The plaintiffs allege three cause of action: (1) discrimination based on sex, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.; (2) interference with pension rights, in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1140; and (3) discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. The plaintiffs seek equitable relief in the form of reinstatement, lost wages, attorney fees, and costs. American Home contends that its decision to close the LaPorte plant was based solely on economic considerations.

The plaintiffs invoke the court's jurisdiction under 42 U.S.C. § 2000e for the Title VII claims, 29 U.S.C. §§ 1001 et seq. for the ERISA claims, and 29 U.S.C. § 621 for the ADEA claims.

This cause is now before the court on five dispositive motions American Home has directed at various aspects of the action:

(1) a motion to dismiss the Title VII claims as to male employees;

(2) a motion to dismiss the ADEA claims as to certain plaintiffs not within the protected age group;

(3) a motion to dismiss all claims as to plaintiff Carolyn Adams;

(4) a motion to dismiss the ADEA claims as to certain plaintiffs for failure to file a timely administrative charge; and

(5) a motion for summary judgment regarding the plaintiffs' ERISA claim.

The plaintiffs filed timely responses to each of those motions. The defendants chose not to reply, and the time for briefing has passed.

## II. Motion to Dismiss Title VII Claims as to Male Employees

Five of the fifty-one plaintiffs in this action [1] are male. American Home contends that Title VII applies only to sexual discrimination directed at women, and that male plaintiffs, who are not part of the protected class, lack standing to assert sex discrimination claims under Title VII. Accordingly, American Home maintains that the male plaintiffs' claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The male plaintiffs respond that males may assert Title VII claims of discrimination based on sex if they are persons aggrieved by an employer's discriminatory actions. The male plaintiffs argue that Congress intended Title VII's broad standing provision to cover all persons injured by a discriminatory employment practice. These males claim that they lost their jobs due to American Home's discrimination against their fellow female employees; thus, they suffered an injury directly related to American Home's sexual discrimination. Accordingly, the male plaintiffs claim to have standing to bring suit.

Rule 12(b)(6) of the Federal Rules of Civil Procedure warrants dismissal of a complaint prior to the filing of a responsive pleading if a defendant demonstrates that the complaint states no claim upon which relief can be based. In reviewing a 12(b)(6) motion, the court must accept as true the complaint's well-pleaded factual allegations and view those facts in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1874); *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir.1973). Dismissal is proper only if it appears beyond doubt that the plaintiffs can prove no set of facts, consistent with the allegations of their complaint, that would entitle them to relief. *Hishon v. King & Spaulding*, 467

---

**1.** The five male plaintiffs are Raymond Baity, Donnie Ray Gaertner, Glenn Starr, Harold Stewart, and Ronald Wise.

U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *French v. Heyne,* 547 F.2d 994 (7th Cir.1976).

The question before the court is a narrow one. These male plaintiffs do not allege "reverse discrimination"; they do not seek to assert the rights of third persons; they do not claim that they were discharged because of their opposition to an unlawful business practice by American Home; they do not claim that they were discharged in retaliation for an activity protected by Title VII. They claim that American Home's decision to close the plant at which they worked was based, at least in part, on the sex of their female co-workers. They assert their own injuries; they assert their own rights.

Whether Title VII allows males standing to sue in such a situation appears to be a question of first impression. Title VII provides that a "person claiming to be aggrieved may bring a civil action". 42 U.S.C. § 2000e–5(f)(1). The Act generally defines unlawful employment practices as actions taken against an individual employee due to that employee's race, color, sex, or national origin,[2] *see* 42 U.S.C. § 2000e–2, but the enforcement provision does not address specifically whether an unlawful business practice against one in a protected class is actionable by one who, while outside a protected class, suffers real injury due to the practice.

Courts that have addressed the matter disagree over the requirements for Title VII standing. Most courts seem to hold that any plaintiff who suffers an injury due to an employer's unlawful business practice is sufficiently aggrieved to have standing to file a civil action. *Waters v. Heublein, Inc.,* 547 F.2d 466 (9th Cir.1976), *cert. denied* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977) (white female had standing to sue to redress discrimination against blacks and Spanish-surnamed em-

ployees); *Bartelson v. Dean Witter Co.,* 86 F.R.D. 657 (E.D.N.Y.1980) (white female had standing to sue for discrimination against blacks). See also *Equal Employment Opportunity Commission v. Bailey,* 563 F.2d 439 (6th Cir.1966), *cert. denied* 435 U.S. 915, 98 S.Ct. 1468, 55 L.Ed.2d 506 (1978) (EEOC could bring suit based on white female's charge of discrimination against blacks); *Hackett v. McGuire Brothers Co.,* 445 F.2d 442, 446 (3rd Cir. 1971) (pensioner, although not an employee, could be a person aggrieved by employment practice under Title VII); *cf. Novotny v. Great American Federal Savings & Loan Ass'n,* 584 F.2d 1235 (3rd Cir.1978) (male had standing to sue when discharged because "his actions and advocacy stood in the path of a plan to deprive women of their equal employment rights"), *rev'd on other grounds* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). The foregoing cases are not dispositive; each addressed actions to enjoin the discriminatory practices, while these male plaintiffs' seeks damages resulting from the alleged discriminatory practice.

Several courts have considered whether the plaintiff alleged, in addition to a cognizable injury, claims that were arguably within the "zone of interests" of the statute, as generally required by *Association of Data Processing Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). See, e.g., *Pecorella v. Oak Orchard Community Health Center,* 559 F.Supp. 147, 149 (W.D.N.Y.1982) (male who alleged that defendant had offered him job at pay greater than female employees was not within "zone of interests" protected by Title VII, hence lacked standing); *Linskey v. Heidelberg Eastern, Inc.,* 470 F.Supp. 1181, 1187 (E.D.N.Y.1979) (male lacked standing for Title VII allegation that defendants "engaged in discriminatory practices against women"); *Curran v.*

---

**2.** Title VII also prohibits discriminatory actions by an employer against an employee in retaliation for that employee's opposition to an action made unlawful by Title VII or for that employee's participation in a Title VII enforcement proceeding. 42 U.S.C. § 2000e–3. This provision is irrelevant in the present action, however, as the male plaintiffs do not contend to raise such a claim.

*Portland School Committee of Maine*, 435 F.Supp. 1063, 1071 (D.Maine 1977) (female job applicant was within Title VII's "zone of interests" to be protected); *Martin v. Safeway Trials, Inc.*, 5 FEP Cases 1164 (D.C.D.C.1973).

■ Statutory interpretations of the Equal Employment Opportunity Commission (hereinafter "EEOC"), while not controlling, are entitled to deference. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The EEOC interprets Title VII to afford standing to anyone protesting any form of alleged employer discrimination, on the theory that all employees have a right to work in an atmosphere free from unlawful employment practices. *Equal Employment Opportunity Commission v. Rinella & Rinella*, 401 F.Supp. 175 (N.D.Ill.1975); EEOC Decision No. 72–0591 (1971), CCH EEOC Decisions (1973) ¶ 6314 at 4562, 4564; EEOC Decision No. 71–969 (1970), CCH EEOC Decisions (1973) ¶ 6193 at 4328, 4329; EEOC Decision No. 70–09 (1969), CCH EEOC Decisions (1973) ¶ 6026 at 4049.

The Seventh Circuit Court of Appeals addressed the scope of Title VII standing in a white assistant principal's suit to enjoin a hiring practice that discriminated against minority applicants. *Stewart v. Hannon*, 675 F.2d 846 (7th Cir.1982). The assistant principal claimed a loss of important benefits from interracial associations in the work place. The Seventh Circuit held that the white plaintiff had standing to assert a Title VII claim. The court relied on *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), in which the Supreme Court held that when Congress used the language "person aggrieved", it intended to allow standing as broadly as Article II of the United States Constitution would permit. The *Stewart* court held that Title VII provided standing to all who suffered an injury due to an unlawful business practice, and that loss of important benefits from interracial associations was a cognizable injury. The *Stewart* court further held that dismissal of the case was improper even though the complaint did not specifically allege that type of injury, because the rules of civil procedure only require notice pleading and it did not appear beyond doubt that the plaintiff could prove no set of facts in support of his claims that would entitle him to relief.

*Stewart v. Hannon, supra*, differs in many ways from the case now before the court. *Stewart* involved racial discrimination; the claims at issue here involve sexual discrimination. In *Stewart*, it appears that the plaintiff sought only equitable relief directed to remedy the wrong done to third parties; these male plaintiffs seek to remedy their own individual injuries. Further, no injury to associational benefits is present in this action: these males were not denied such association during their employment with American Home; all workers were fired at the same time.

■ Nonetheless, *Stewart v. Hannon, supra*, compels the denial of American Home's motion to dismiss. According to *Stewart*, the scope of the language "person aggrieved" confers standing to all persons injured by an unlawful employment practice. These male plaintiffs allege such an injury, and thus have standing. This is as it should be. These males suffered the same injury as did the females that lost their jobs; the injuries of the males and females were occasioned by the same corporate decision; and if, as the plaintiffs allege, considerations of sex motivated the corporate decision to close the LaPorte plant, the corporate decision that injured the male plaintiffs constituted an unlawful employment practice under Title VII.

Perhaps the male plaintiffs' remedies may be limited in light of the nature of the suit and the proof, but the court cannot find that the male plaintiffs could prove no set of facts at trial that would entitle them to relief.

### III. Motion To Dismiss ADEA Claim As To Plaintiffs Not Within The Protected Class

American Home's contentions with regard to this motion mirror their arguments

discussed above, with the additional argument that this court lacks subject matter jurisdiction over the claim and personal jurisdiction over the action because the ADEA protects only workers who are between forty and sixty-nine years of age. On this basis, American Home moves to dismiss the twenty plaintiffs who are under the age of forty.[3]

The plaintiffs respond that three of the those twenty plaintiffs are older than forty,[4] and that all plaintiffs have standing under the ADEA. The plaintiffs' arguments mirror those discussed above.

Resolution of the three plaintiffs' disputed ages is unnecessary; all the plaintiffs have standing under the ADEA. The ADEA makes it unlawful to discharge an employee because of that employee's age. 29 U.S.C. § 623(a)(1). The ADEA's prohibitions are limited to employees who are at least forty years of age but less than seventy years of age. 29 U.S.C. § 631(a). Any person aggrieved may bring a civil action for such legal or equitable relief as will effectuate the purpose of the ADEA. 29 U.S.C. § 626(c)(1). Congress enacted the ADEA in 1967 for the express purpose of promoting "employment of older persons based on their ability rather than age" and prohibiting "arbitrary age discrimination". *Usery v. Tamiami Tours, Inc.*, 531 F.2d 224 (5th Cir.1976).

Several courts have described § 631 of the ADEA as limiting standing to persons within the protected age group. For example, in *Hahn v. City of Buffalo*, 596 F.Supp. 939 (W.D.N.Y.1984), in which the plaintiffs attacked an "under thirty" appointment policy, the court said, "only persons between ages 40 and 70 are protected by the ADEA", *id.* at 942 n. 3, but proceeded to consider the case because three of the original plaintiffs were over the age of forty. In *Murnane v. American Airlines, Inc.*, 667 F.2d 98 (D.C.Cir.1981), *cert. denied* 456 U.S. 915, 102 S.Ct 1770, 72 L.Ed.2d 174 (1982), a 43–year-old plaintiff attacked an airline's "age thirty" hiring limit; the court considered the hiring limit as "age forty" because persons below that age were unprotected by ADEA. *Id.* at 100 n. 3. These cases teach that one too young for ADEA protection cannot complain of preferential treatment of one still younger.

■ American Home, however, has cited this court to no case considering ADEA protection of persons who were discharged along with other employees who were discriminated against because of their age. No basis has been presented to this court to distinguish Title VII standing from standing under the ADEA, and, for the reasons discussed above, finds that dismissal is unwarranted.

## IV. Motion To Dismiss All Claims As To Carolyn Adams

■ American Home moves to dismiss all claims brought by plaintiff Carolyn Adams on the ground that Ms. Adams failed to file a timely administrative charge with the EEOC as to any of her claims. The plaintiffs do not oppose this motion.

American Homes' motion is well-taken; on these grounds, the court will dismiss all claims brought by Ms. Adams.

## V. Motion To Dismiss ADEA Claims As to Certain Plaintiffs For Failure to File Timely Administrative Charges

American Home moves to dismiss the ADEA claims of thirty-seven of the plain-

---

**3.** American Home alleges that the following plaintiffs (whose alleged age shall follow in parenthesis) are not protected by the ADEA: Luann Bartoszewicz (39), Kathy G. Bailey (26), Claudine Beaty (33), Jeanette Duda (30), Betty Evans (38), Donnie Ray Gaertner (35), Betsy Ann Greer (33), Patricia M. Heminger (34), Dawn L. Johnson (28), Regina T. Kindig (34), Beverly A. Kuemin (32), Deloris A. Lidgard (32), Barbara MacMillan (36), Sharon A. Martin (34), Olivia A. Pasha (36), Teresa A. Reed (27), Clau-

dette C. Stewart (34), Harold Stewart (37), Vivian Tolson (36), and Madgie Whickcar (38).

**4.** Plaintiffs contend that Luann Bartoszewicz was born on July 22, 1944, Betty Evans was born on August 28, 1945, and Madgie Whickcar was born on June 20, 1945. None of these plaintiffs were with the protected group in the early part of 1984, when the plant's closing was announced.

tiffs for failure to file timely charges of age discrimination with the EEOC. According to American Home, the ADEA requires, as a jurisdictional prerequisite to a private suit, that an aggrieved person file a charge of age discrimination with the EEOC within one hundred eighty days after the alleged unlawful practice occurs.[5]

American Home contends that the alleged unlawful practice in the present action occurred on January 20, 1984. The plaintiffs' complaint alleges that on that date, American Home "announced that it was closing the LaPorte plant"; the affidavit of Alfred Jablonski, submitted by American Home in support of one of its summary motions, alleges that American Home notified its employees that it was considering closing the LaPorte plant on that date. A determination that the alleged unlawful practice occurred on January 20th would render untimely charges filed after July 18, 1986.

American Home contends that thirty-seven of the plaintiffs filed their age discrimination charges on or after July 19, 1984.[6] With its motion, American Home filed thirty-three exhibits that appear to be copies of the plaintiffs' charges filed on the dates American Home alleges. American Home requests dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), (2), and (6).

The plaintiffs dispute both the date of accrual of the cause of action and the date of filing of the charges. The plaintiffs (despite the allegations of their complaint) contend that their cause of action could not have accrued before February 21, 1984, when American Home first informed its employees of its final decision to close the LaPorte plant. The plaintiffs further contend that twenty-seven of their number filed charges jointly on July 3, 1984 (personally delivered by Ms. Madgie Whickcar),[7] and that the remaining ten contested charges were filed on or before August 8, 1974.[8] If the cause of action accrued on February 21, 1984, all charges filed on or before August 20, 1984 would be timely. All plaintiffs filed age discrimination charges with the EEOC by August 8, 1984. Accordingly, the plaintiffs contend, their administrative charges were timely filed,

5. The parties agree that Indiana is not a referral state under the ADEA, so that the one hundred eighty day period applies. *Keitz v. Lever Brothers Co.,* 563 F.Supp. 230 (N.D.Ind.1983).

6. American Home contends that the following plaintiffs filed their administrative charge of age discrimination with the EEOC on the following dates: Raymond Baity, 8/1/84; Evelyn Bannwart, 7/19/84; Luann Bartoszewicz, 7/25/84; Barbara Bealor, 7/23/84; Claudine Beaty, 7/25/84; Caroline Mae Bowen, 8/1/84; Mercedes Brashear, 7/19/84; Emma J. Brownlee, 7/25/84; Arlene Chambers, 8/3/84; Bernice DePoy, 7/23/84; Marilyn L. Dewitt, 7/20/84; Jeanette Duda, 7/25/84; Betty Evans, 7/25/84; Edna Lee Evans, 7/23/84; Betsy Ann Greer, 7/25/84; Sharon Hudson, 7/23/84; Elizabeth A. Kline, 7/23/84; Beverly A. Kuemin, 8/2/84; Delores A. Lidgard, 7/27/84; Barbara MacMillan, 7/23/84; Sharon A. Martin, 7/23/84; Fidencio Mejia, 8/8/84; Phyllis O'Brien, 7/19/84; Teresa A. Reed, 7/25/84; Eva Lee Rice, 7/20/84; Joyce Sallee, 8/1/84; Katherine Salzer, 7/31/84; Patricia Soplanda, 7/31/84; Emelia M. Starr, 7/23/84; Claudette C. Stewart, 7/23/84; Harold Stewart, 8/3/84; Norma Straub, 7/25/84; Vivian Tolson, 8/3/84; Laura Toothman, 7/23/84; Madgie

Whickcar, 7/23/84; Mabel Willkis, 8/6/84; Ronald L. Wise, 10/84.

7. Plaintiffs have filed a sworn affidavit of Ms. Madgie Whickcar in which she attests that she personally delivered to and filed with the EEOC, on July 3, 1984, the charges of the following plaintiffs: Evelyn Bannwart, Luann Bartoszewicz, Barbara J. Bealor, Claudine Beaty, Caroline Mae Bowen, Emma J. Brownlee, Bernice De-Poy, Marilyn L. DeWitt, Jeanette Duda, Edna Lee Evans, Betsy Ann Greer, Sharon A. Hudson, Elizabeth A. Kline, Beverly A. Kuemin, Deloris Lidgard, Barbara MacMillan, Sharon A. Martin, Teresa A. Reed, Eva Lee Rice, Emelia M. Starr, Claudette C. Stewart, Harold Stewart, Norma Straub, Vivian Tolson, Laura Toothman, Madgie Whickcar, and Ronald Wise.

8. Plaintiffs filed what appear to be copies of the EEOC charges of the following plaintiffs to show that their charges were filed on the following dates: Raymond Baity, 7/9/84; Mercedes Brashaer, 7/16/84; Arlene Chambers, 7/19/84; Betty Evans, 7/3/84; Fidencio Mejia, 8/8/84; Phyllis O'Brien, 7/6/84; Joyce Sallee, 7/17/84; Kathleen Salzer, 7/23/84; Patricia Soplanda, 7/23/84; and Mabel Willis, 7/23/84.

**1560**

and American Home's dismissal motion should be denied.

■ Under the ADEA, an aggrieved party must file a charge of age discrimination with the EEOC within one hundred eighty days after the alleged unlawful practice. 29 U.S.C. § 626(d)(1). American Home contends that failure to comply with that provision precludes this court's jurisdiction over the subject matter of the action and over the parties. Past uncertainty as to whether the ADEA's filing requirements are jurisdictional or merely preconditions to suit more similar to a statute of limitations [9] was resolved by *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1981), when the Supreme Court held that the filing of charges is not a jurisdictional prerequisite for a private enforcement action under Title VII, and implied that the ADEA's filing requirements are not jurisdictional. *Id.* at 395 n. 11, 102 S.Ct. at 1133 n. 11. The Court reasoned that it would be inappropriate to interpret the filing requirements as jurisdictional in light of Congress' intent to create a statutory scheme in which laymen, unassisted by lawyers, initiate the process. *Id.* at 397, 102 S.Ct. at 1134–35. The ADEA's filing requirements are not treated as jurisdictional prerequisites in the Seventh Circuit. *Posey v. Skyline Corp.,* 702 F.2d 102 (1983) (question of compliance with filing requirements of the ADEA treated as impairing causes of action rather than as a jurisdictional impairment). American Home is not entitled to dismissal under Rule 12(b)(1) or 12(b)(2).

American Home also contends that because the age discrimination charges were not timely filed, the complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6); American Home submits thirty-three exhibits to support its allegation. In response, the plaintiffs rely upon several affidavits and exhibits. Courts may con-

sider such extraneous materials motions based upon Rule 12(b)(1) and (2), but when a defendant seeks dismissal under Rule 12(b)(6) the court must either exclude matters outside the pleadings and base its ruling the complaint's face, or convert the motion to one for summary judgment, give all parties reasonable opportunity to present materials made pertinent to such a motion by Rule 56, and dispose of the matter as provided in Rule 56. Fed.R.Civ.P. 12(b). Whether to accept materials beyond the pleadings is a matter within the district court's discretion. 5 C. Wright and A. Miller, *Federal Practice and Procedure* 678–679 (1969).

The plaintiffs' complaint is inconclusive as to the timeliness issue. Paragraph 59 of the complaint alleges the timely filing of age discrimination charges; that conclusory allegation might be deemed sufficient to overcome the dismissal motion. See *EEOC v. Standard Forge & Axle Co.,* 496 F.2d 1392 (5th Cir.1974). Paragraph 65 of the complaint, however, alleges that American Home announced the plant closing on January 20, 1984. This allegation, which the plaintiffs now seem to recant, renders uncertain the timeliness of the charges.

The extra-pleading materials the parties have provided are as troubling as they are helpful; that the parties produce copies of what would appear to be age discrimination charges that appear to bear different filing dates is quite intriguing. American Home's version appears to carry the EEOC's file-mark, which is noticeably missing from the plaintiffs' version. Some of the plaintiffs' version is supported by Ms. Whickcar's affidavit, however.

Early determination of the timeliness of the charges should result in great savings of time and resources, and disposition of the issue appears unlikely to require extensive discovery. Accordingly, the court will convert American Home's motion to dismiss into a motion for summary judgment

---

**9.** See, e.g., *Healen v. Eastern Airlines, Inc.,* 9 FEP Decisions (CCH) ¶ 10,022 (N.D.Ga.1973) (requirements jurisdictional; plaintiff required to make "affirmative and conclusive showing of compliance with the jurisdictional requirements of timely filing" when challenged by a Rule 12(b)(1) motion).

pursuant to Fed.R.Civ.P. 12(b). The parties have not been afforded a full opportunity to present materials pertinent to summary judgment, however, and the record now before the court is insufficient for determination of the summary judgment motion.

The record now before the court would not allow the court to find the charges to have been untimely filed. Mr. Jablonski's affidavit indicates that the first final announcement of the plant closing was contained in a February 21, 1984 letter. The cases cited by the plaintiffs indicate that an age discrimination claim accrues when the employer announces a final decision to discharge the employees, rather than when the employees first learn that their jobs were in jeopardy. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Bonhan v. Dresser Industries, Inc.,* 569 F.2d 187 (3rd Cir.1977), *cert. denied* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Under the summary judgment standard recently announced in *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the plaintiffs carry the burden of proof to demonstrate that a genuine issue of fact exists for trial. The court also notes that American Home has yet to carry its initial burden under Rule 56 in this matter, as the exhibits it has presented are not properly verified. If the claims accrued on February 21st, however, American Home's allegations of the filing dates would make all the filings timely, except that of Ronald L. Wise.

Accordingly, this order will serve as notice of the changed status of the motion, and the parties will be allowed to file further materials and written argument made pertinent under Rule 56. American Home shall have fifteen (15) days from the date of this order within which to file supplementary materials and legal memoranda. Plaintiffs shall have fifteen (15) days thereafter to file supplementary materials and legal memoranda. American Home shall have five (5) days after plaintiffs' response to file any reply.

## VI. Motion for Summary Judgment As To Plaintiffs' ERISA Claims

American Home moves for summary judgment as to the plaintiffs' ERISA claims, contending that the claims are barred by the plaintiffs' failure to exhaust their administrative remedies and waiver of suit. According to American Home, the plaintiffs had two means of presenting their ERISA claims to the company during the wind-up of plant operations: through the claim procedure set forth in the pension plan's provisions (hereinafter referred to as "the internal review"), and through the grievance procedure provided for in the controlling collective bargaining agreement. The plaintiffs took neither line of attack, and instead allowed their union to negotiate a closure agreement and a severance clause. American Home supports these allegations with an affidavit of Nathan Smith (who states that no complaint for internal review has ever been filed), an affidavit of Alfred F. Jablonski (who states that no claims under the collective bargaining agreement have ever been pursued), copies of the controlling collective bargaining agreement, the closure agreement, a supplement to the closure agreement pertaining to severance allowance, and a pamphlet describing the retirement plan. American Home argues that the plaintiffs failed to exhaust the available administrative remedies of internal review and of arbitration under the collective bargaining agreement. American Home also contends that by by-passing these administrative remedies and allowing their union to negotiate a closure agreement, the plaintiffs waived their right to assert the ERISA claims.

The plaintiffs generally admit the facts presented by American Home, but dispute the conclusions American Home draws from those facts.

First, the plaintiffs argue that American Home misinterprets the requirement of exhaustion. According to the plaintiffs, whether to require exhaustion of available

administrative remedies is a matter within the discretion of the district court, which is to consider whether exhaustion would reduce the parties' costs while maintaining proper dispute settlement under federal law. Exhaustion should not be required of these plaintiffs, they argue, because it would be futile and would do injury to federal law that allows enforcement, by private suit in federal court, of personal rights created by ERISA.

Second, the plaintiffs contend that, even if exhaustion is required, no administrative remedies have been available to them. Internal review only provides for review of "claims of benefits"; because none of these plaintiffs had vested rights in the pension, none of them could have filed a "claim of benefits". The collective bargaining agreement covers only misunderstandings and complaints "as to the meaning or application of" the agreement; because the pension plan is not a part of the collective bargaining agreement, no grievance could be filed.

Lastly, the plaintiffs contend that because the union lacks authority to waive its members' federal statutory rights as a matter of law, American Home's waiver argument is meritless.

Rule 56 of the Federal Rules of Civil Procedure empowers this court to enter summary judgment when no genuine issues of material fact exist and judgment should issue as a matter of law. A defendant that moves for judgment under Rule 56 bears the burden of proof as to both required elements of the showing, *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the motion should be denied unless "there can be but one reasonable conclusion as to the verdict", *Anderson v. Liberty Lobby, Inc.*, — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When the parties do not disagree as to the facts or the inferences that flow from them, a summary judgment motion presents purely legal questions.

These parties do not dispute what occurred at the time of the plant's closing or what contractual agreements governed the pension plan and the collective bargaining arrangement. The parties present purely legal questions concerning the procedures available under their agreements, and whether and to what extent exhaustion is required prior to commencing a private enforcement action under ERISA. The exhaustion issue will be addressed first.

### A. Exhaustion of Administrative Remedies Under ERISA

It is unlawful for any employer to discharge any employee who is a participant in a retirement plan protected by ERISA for the purpose of interfering with that employee's attainment of pension rights. 29 U.S.C. § 1140. Such an employee may bring a civil action to enjoin his discharge or to obtain equitable relief to redress the improper discharge. 29 U.S.C. § 1132(a)(3). Section 1132 says nothing of exhaustion of administrative remedies as a prerequisite to a civil action.

The circuits are split as to whether exhaustion is required prior to suit in federal court. *Mason v. Continental Group, Inc.*, — U.S. —, 106 S.Ct. 863, 88 L.Ed.2d 902 (White, J., dissenting). In the Seventh Circuit, exhaustion of administrative remedies has been required, *Kross v. Western Electric Co.*, 701 F.2d 1238 (7th Cir.1983); while the Ninth Circuit has held that an exhaustion requirement is inappropriate. *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir.1984).

*Kross v. Western Electric Co., supra,* involved an employee who had been terminated during a reduction of work force. The employee sought to bring a class action under ERISA some five years after his discharge, alleging that he had been terminated to prevent the vesting of his pension rights. Under the pension plan, the employee had a right to file a complaint with the five-member committee that administered the plan; that committee had been granted the specific power to "determine conclusively ... all questions arising in the administration of the Plan". The district court granted summary judgment in favor of the employer, holding that the employ-

ee's failure to exhaust his administrative review under the pension plan barred relief. *Kross v. Western Electric Co.*, 534 F.Supp. 251 (N.D.Ill.1982).

The Seventh Circuit concluded that "application of the exhaustion doctrine in ERISA cases by requiring a claimant to exhaust administrative remedies prior to bringing suit is a matter within the discretion of the trial court", and that "strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes, mandates the application of the exhaustion doctrine in this case". 701 F.2d at 1244.

The court relied on *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980), in noting several reasons for requiring exhaustion: Congress established administrative claim-resolution procedures to reduce the number of frivolous ERISA suits, promote consistent treatment of claims, provide for non-adversarial methods of settlement and minimize the cost of settlement of claims. Further, the requirement of exhaustion reduces the likelihood that early judicial intervention will impair trustees' abilities to manage pension funds with expertise and efficiency. Finally, allowing pension fund trustees to refine their actions will assist the courts when judicial review is finally invoked. The court found that these considerations were not overcome by the plaintiff's arguments that (1) the suit involved purported violations of ERISA rather than the provisions of the particular pension plan, and (2) neither the pension plan's administrators nor the plan itself were parties to the litigation. *Kross*, 701 F.2d at 1245.

■ *Kross* is indistinguishable from the case now before the court. The plaintiffs note that their claim is that the employer has violated ERISA rather than the pension fund, but that argument was found to be of insufficient weight in *Kross* itself. The plaintiffs' strongest argument is that *Kross* was wrongly decided,[10] but that argument is voiced to the wrong court; this court does not arrogate unto itself the authority to simply disregard authority so clearly controlling on the ground that it is wrong.

American Home's summary judgment motion as to the ERISA claims is well-taken under the law of this circuit, and should be granted.

### B. Waiver

■ While this court will not overrule *Kross*, the court of appeals might do so; accordingly, the court will address American Home's waiver argument, which the court finds to be without merit. American Home cites no portion of the closure agreement in which the union purported to waive the plaintiffs' rights to enforce ERISA by civil action. Even had American Home shown that the union waived those rights, American Home ventures no explanation of the union's authority to do so. ERISA rights appear to be no different from other statutory entitlements to individual rights that a union cannot waive. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (Title VII); *Barrantine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (FLSA rights).

**10.** Several recent cases draw the continuing viability of *Kross* into doubt. Insofar as the exhaustion requirement of *Kross* would require grievance arbitration under a collective bargaining agreement, recent Supreme Court decisions would support the view that the presumption of arbitrability of the famous *Steelworkers Trilogy* does not apply to disputes over pension rights. *See, e.g., Central States, Southeastern and Southwestern Areas Pension Fund v. Central Transport, Inc.*, — U.S. —, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985); *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). Several courts have disapproved of the principles set forth in *Kross. Barrowclough v. Kidder, Peabody & Co.*, 752 F.2d 923 (3rd Cir.1985); *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492 (D.N.J.1985); *Grywczynski v. Shasta Beverages, Inc.*, 606 F.Supp. 61 (N.D.Cal.1984). A recent decision by a district court in this circuit appears to limit the requirements of exhaustion of *Kross* to administrative review within the provisions of the pension plans, so as to exclude review via a grievance procedure of a collective bargaining agreement. *Lindahl v. American Telephone & Telegraph*, 609 F.Supp. 267 (N.D. Ill.1985).

### VII. Conclusion and Order

The court, therefore, ORDERS:

(1) that the defendants' motion to dismiss all Title VII claims as to male plaintiffs is DENIED;

(2) that the defendants' motion to dismiss all ADEA claims as to plaintiffs not within the protected age group is DENIED;

(3) that the defendants' motion to dismiss all claims of plaintiff Carolyn Adams is GRANTED;

(4) that the defendants' motion to dismiss all ADEA claims as to certain plaintiffs for failure to file timely administrative charges is CONVERTED to a motion for summary judgment, with ruling DEFERRED to allow the parties an opportunity to file supplementary briefs and materials;

(5) that the defendants' motion for summary judgment as to the ERISA claims is GRANTED, and the plaintiffs' claims for ERISA violations are DISMISSED; and

(6) that the stay of discovery imposed by this court, by order of August 14, 1986, is lifted.

SO ORDERED.