David W. **CHILDRESS**, et al., Plaintiffs,

v.

**CITY OF RICHMOND, VIRGINIA et al., Defendants.**

Civ. A. No. 3:95CV662.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 21, 1995.

---

Jay Joseph Levit, Levit & Mann, Richmond, VA, for plaintiffs.

Beverly Joanne Agee Burton, Norman Bernard Sales, Office of City Attorney, Richmond, VA, for defendants.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendants' Motion to Dismiss And/Or for Summary Judgment. This case presents the question of whether a white or male worker can state a civil rights claim for a supervisor's hostility to blacks or women. Because the most logical interpretation of the law argues against such a claim, the white male officers are dismissed from this case and the female officers may continue only their sex-discrimination claims. The plaintiffs' remaining claims are dismissed for the reasons stated below, and Chief of Police Jerry Oliver remains as a proper defendant because the Court finds he has been sued in his individual capacity.

### I.

Seven white male and two white female police officers filed suit against the City of Richmond and its Chief of Police, Jerry Oliver. Plaintiffs ("the officers") allege the existence of a racially and sexually hostile work environment in violation of Title VII and §§ 1981 & 1983, intentional discrimination in violation of those sections, retaliation and violation of the public policy of the Commonwealth of Virginia. In addition, in their response to the City's motion, the officers raise a First Amendment claim based on their right to criticize the operation of the government. The officers are members of Platoon A, Second Precinct, in the City of Richmond.

The officers allege that their immediate supervisor, Lt. Arthur T. Carroll, a white male, has created a hostile environment by a variety of race- and sex-biased comments. In November or December 1993, they allege that Carroll said to three female officers "Well, I see all my bitches are here, it must

not be that time of the month." On December 16, 1993, they allege that Carroll noted with obvious approval that an all-white, all-male roll call of officers was "like it used to be." On January 3, 1994, they allege that Carroll called female officers his "pussy posse" and "vaginal vigilantes" in the presence of both male and female officers. Early in 1994, they allege that one of the officer's wives called Carroll and then heard him say in the background that a black female officer was a "mother-fucking worthless black bitch," a "no good black bitch" and a "most useless nigger." They also allege Carroll to be emotionally out of control, extremely verbally abusive and given to alarming outbursts of temper and profanity.

In response to this situation, on January 20, 1994,[1] the officers presented a complaint letter to Captain Frederick Hicks, Officer-in-Charge of the Second Precinct. The letter did not mention the above-listed specific incidents, and did not mention race, sex or hostile environment by name, but instead questioned Lt. Carroll's mental stability and recommended that the Department give him an independent psychiatric exam. Sixteen officers signed the letter, including all of the plaintiffs. After receiving the complaint letter, Capt. Hicks showed it to Lt. Carroll.

The officers allege that word of the letter reached Lieutenant Wayne Johnson, the officer in charge of Platoon B. He took the allegedly unprecedented step of calling in the signatories, pulling them away from their police duties (which have not been specified) and thereby endangering the public. Johnson advised the officers to retract the letter and intimated that failure to do so could harm their jobs. They refused. Capt. Hicks conducted an investigation and apparently never took action against Lt. Carroll, but the officers allege that Capt. Hicks harassed and threatened them during their investigation. The officers allege that thereafter they were subjected to adverse treatment (see ¶ 16–26 of the Complaint) including transfers and negative evaluations.

The officers base their theory of hostile environment on the need for "teamwork" as a "vital and indispensable working condition,"

without which police officers and the public will be endangered. They allege that Lt. Carroll's comments and attitudes have created a chilling effect and a destruction of teamwork between officers of different races and sexes. They also allege that the police department's "chain of command" policy makes it a "cardinal sin" to criticize a supervisor. This policy, they allege, deprived them of the fulfillment of the teamwork concept, a vital and necessary term and condition of their employment contracts. They allege that their adverse evaluations cited failure to follow the chain of command.

## II.

### 1. Standard for motions to dismiss and for summary judgment in a case involving a municipality.

 As a preliminary matter, the Court notes that the normal standards for review of motions apply to this case. The federal courts follow notice pleading, not fact pleading. Fed.R.Civ.P. 8(a)(2). Municipalities do not have the benefit of requiring a more stringent "heightened pleading" standard in cases under § 1983. Notice pleading applies equally to claims against cities and private parties. *Leatherman v. Tarrant County*, 507 U.S. 163, 167–68, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517, 523 (1993).

### 2. Title VII and § 1981 claims.

#### a. Lack of Jurisdiction.

 The City moves to dismiss plaintiffs Stachura, Childress and Quinney under Fed.R.Civ.P. 12(b)(1) on the basis that those plaintiffs have not received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). This requirement is indeed jurisdictional. Plaintiffs concede that Quinney did not timely file and must be dismissed; however, the officers' brief includes copies of EEOC right-to-sue letters to Stachura and Childress, so it appears that jurisdiction is proper as to them.

---

**1.** The letter is dated January 13, 1995, but was presented to Hicks on January 20.

### b. Gender Claims.

■ The City's Motion argues that the complaint does not allege sufficient numbers of sexually hostile incidents, essentially demanding fact pleading. The more interesting issue is whether a male can state a claim for discrimination against female co-workers. Generally, there is no right to assert the civil rights of another person; to state a civil rights claim for which relief can be granted, one must allege that he, himself, suffered deprivation of a right, privilege or immunity secured to him by the Constitution or federal laws. *See Inmates v. Owens*, 561 F.2d 560, 561 (4th Cir.1977).

■ With respect to the hostile environment claims, the Court's research, and that of the parties, discloses no direct precedent for the instant case. Same-sex harassment cases provide useful persuasive authority. The Fourth Circuit has not yet decided the same-sex issue, but the prevailing view is that Title VII addresses only discrimination *between* the sexes. *See Garcia v. Elf Atochem North America*, 28 F.3d 446, 452 (5th Cir.1994); *Benekritis v. Johnson*, 882 F.Supp. 521, 525 (D.S.C.1995). Three district courts in the Fourth Circuit, including one in the Eastern District of Virginia, have held that same-sex harassment does not constitute a Title VII or § 1981 claim. *See Mayo v. Kiwest Corp.*, 898 F.Supp. 335, 337, (E.D.Va.1995) (holding that courts interpret *Harris v. Forklift Systems, Inc.*, — U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), to prohibit same-sex claims because same-sex does not amount to discrimination "because of" the plaintiff's gender). The one appellate court to address the issue dismissed the claim. *See Garcia*, 28 F.3d 446. Only a single district court in the Fourth Circuit, also in the Eastern District of Virginia, has recognized a same-sex hostile environment claim. *Ecklund v. Fuisz Technology, Ltd.*, 905 F.Supp. 335 (E.D.Va.1995). One pattern, at least, is clear: for same-sex harassment to support a claim, there must be an allegation of *quid pro quo* or, at the very least, some

sexual element to the harassment or hostile environment.

■ With respect to intentional discrimination claims, a plaintiff may prove indirect evidence of discrimination by showing: (1) his membership in a protected class; (2) that he was qualified; (3) that despite his qualifications he suffered adverse employment action; and (4) that after the adverse action, the job remained open to persons with the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Addressing the intentional discrimination claims first, this Court holds that the male officers have failed to state a claim. The term "protected class" is clearly meant to limit the potential class of plaintiffs. If "protected class" is to have any definition other than "all of humanity," it must mean a class which is defined against, and protected with respect to, the alleged discriminator. Where as here a male supervisor is of the same sex as the male plaintiffs, and is actually alleged to be biased *in their favor*, those male plaintiffs cannot be said to be within a protected class with respect to the supervisor. The male officers in this case are not in a protected class and thus fail the first prong of the *McDonnell Douglas* test.

■ Addressing the hostile environment claim, the Court holds that Title VII permits no claim for hostile environment based on same-sex harassment where there is neither an allegation of *quid pro quo* nor some sexual component of the harassing behavior.[2] Therefore by analogy to same-sex harassment, and under a general understanding of Title VII, the male officers' gender discrimination claims should be dismissed. To the extent that the male officers attempt to assert the rights of other persons, female officers, they clearly state no claim. To the extent they assert a general Title VII right to be free of tensions caused by special treatment in their favor, the male officer's complaints should be dismissed because they attempt to create a new Title VII right out of

---

**2.** The Court expresses no opinion on the validity of a *quid pro quo* same-sex harassment claim, as that issue is not before it.

whole cloth. Any way their complaints are viewed, the male officers are attempting to recover for violations of other people's civil rights, which they have no standing to do. It should be noted that the male officers do not allege that the lack of "teamwork" rises to the level of having women create a hostile working environment against them—rather, the hostility alleged is the hostility of the supervisor toward their compatriots.

 The female officers' sex-based claims do not suffer the defects of the male officers' claims; under notice pleading, they have stated a claim for hostile environment. The female officers' claims should also survive the motion for summary judgment because they state a claim and the Complaint raises genuine issues of material fact. The City's Motion does not furnish even a single affidavit to contradict the allegations that Lt. Carroll made inflammatory statements or created a hostile environment.

The City does not make the arguments above; instead, it argues that all the claims should be dismissed for failure to plead sufficient facts. That argument fails because of the Federal Rules' preference for notice pleading. *See Leatherman*, 507 U.S. at 167–68, 113 S.Ct. at 1163, 122 L.Ed.2d at 523.

### c. Race claims.

 Claims for racially and sexually hostile environments are held to the same standards by Fourth Circuit decisions. *See Dennis v. County of Fairfax*, 55 F.3d 151, 155 (4th Cir.1995); *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir.1994). All nine officers are white, as is the supervisor whose conduct they complain of. Therefore the race-based claim of all of the officers suffers from the same defects as the male officers' gender claim. At its heart, the officers' Title VII claim either attempts to assert the civil rights of others or alleges that they were discriminated against by being provided disparate and *better* treatment than their black peers. Neither allegation states a claim. Again, the officers do not allege that their black co-workers have created a hostile work environment against them; rather, the "hostility" in the work environment comes from the white supervisor and resulting reductions

in "teamwork," a separate § 1983 claim discussed below. The Court holds that the civil rights laws permit no claim for same-race discrimination where the only allegation is that a supervisor is biased in the plaintiffs' favor.

### d. Retaliation.

 A plaintiff can establish a valid retaliation claim without a valid claim for the discrimination itself. However, the plaintiff must believe in the validity of the claim, and that belief must be reasonable. *Mayo*, 898 F.Supp. at 337. In determining reasonableness of belief, a court must look to pre-existing case law. *Id.* In the context of a same-sex complaint, *Mayo* found that reasonableness did not exist and thus same-sex retaliation did not state a claim. *Id.*

 The female officers' claims for sexually hostile environment and intentional discrimination do state a claim and are sufficient to survive a motion to dismiss. As the claims are valid, the retaliation charge is also properly stated and should survive the City's Motion.

 The male officers' gender claims, and the race claims of all of the officers, cannot be reasonably expected to state a claim and therefore the male officers' retaliation claims must be dismissed.

### 3. Section 1983: motion to dismiss.

#### a. Claims via rights guaranteed by § 1981.

 A plaintiff cannot separately state a claim against a municipality under § 1981. When suit is brought against a state actor, § 1983 is the exclusive remedy for federally guaranteed rights. *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995). A plaintiff must show that the discrimination is part of an official custom or policy. *Id.*

The § 1981 claims should be dismissed for failure to show racial discrimination, as explained above.

### b. Other § 1983 claims.

The Complaint itself, in Count II, ¶¶ 29 & 30, only alleges that the City "discriminated against" the officers in violation of "§§ 1981 and 1983." The complaint does not allege on what basis the discrimination occurred—race, protected speech or any other ground—but the City has not moved for a more definite statement. By their response and oral argument to the City's motion, the officers appear ready to make a number of § 1983 claims independent of § 1981.

#### i. Property right in teamwork in a paramilitary organization.

 The officers allege in their brief that there is a property right in the teamwork of a paramilitary organization, of which the police force is one, and that deprivation of that property right without a hearing is a violation of due process. The officers do not cite any case law for this proposition, but may intend to make an argument under cases such as *Egger v. Phillips.* 710 F.2d 292 (7th Cir.1983). In that case, an appeals court mentioned that a trial court had judicially noted that teamwork was of "primary importance" in the FBI as a paramilitary organization. *Id.* at 295. "Teamwork" in this context, however, was not cited as a property right but as a justification for great judicial deference to governmental decisions where teamwork and discipline are needed; that is, "teamwork" cases actually argue against the officers' position.

The concept of teamwork as a property interest is not illogical, but it does not have direct support in the case law. The concept is used instead in conjunction with valid race and gender claims; since most of the officers' race and gender claims are not valid, they cannot circumvent the limitations on § 1981 or Title VII by the use of "teamwork."

#### ii. Freedom of speech.

 Although the complaint does not mention First Amendment rights, the officers' brief raises the issue. To prevail, a public employee has the initial burden to prove that the allegedly protected speech (1) involved a matter of public concern and that his interest in commenting upon it outweighed the employer's interests in efficient operations, and (2) the speech constituted a "substantial" or "motivating factor" in the adverse employment decision. *Hughes v. Bedsole,* 48 F.3d 1376, 1385 (4th Cir.1995). Rather than attempting to define "public concern," the Fourth Circuit takes the approach of requiring that a plaintiff demonstrate that he was speaking as a citizen on matters of public concern, rather than as an employee on matters peculiar to his employment. *See DiMeglio v. Haines,* 45 F.3d 790, 805 (4th Cir.1995). Even if the employee is speaking as a private citizen, protection depends on a balance between his interest and governmental efficiency. *See Id.*

 The speech at issue in this case, the letter against Lt. Carroll, was clearly "spoken" by employees. The officers wrote the letter in their capacity as police officers, employees, about a condition of their employment. The officers took issue with his temper and his style. They paid lip service to lack of teamwork and the resulting potential for decreases in public safety, but the officers' real concerns were intramural concerns, concerns about matters peculiar to their employment. The officers have not stated a claim for violation of their free-speech rights, and any free speech claim must therefore be dismissed.

### 4. Public policy.

 Virginia strongly adheres to the at-will employment doctrine, with a narrow exception for violations of public policy. *See Lockhart v. Commonwealth Educ. Systems Corp.,* 247 Va. 98, 439 S.E.2d 328, 330 (1994). The exception is limited to policy as embodied by state statutes, not federal ones. *White v. Federal Exp. Corp.,* 729 F.Supp. 1536, 1550 (E.D.Va.1990). The exception is also limited to public, not private rights. *Miller v. SEVAMP,* 234 Va. 462, 362 S.E.2d 915, 918 (1987); *Flinders v. Datasec Corp.,* 742 F.Supp. 929 (E.D.Va.1990).

 A state statute against race and gender discrimination does exist: "unlawful discrimination because of race [or] sex" was made a violation of public policy by the Virginia Human Rights Act, Va.Code Ann. § 2.1–725, so there does now appear to be a com-

mon-law cause of action for race- or sex-based job discrimination. However, this right does not appear to add to the substantive provisions of federal law. More importantly, the officers have not identified this statute as the one on which they base their public policy claim.

The officers did specify in their Complaint what public policy of Virginia they intend to sue upon. In paragraphs 3(a–c) of their Complaint, they refer to public policy as set out in Va.Code Ann. §§ 15.1–137 & –138, but these sections merely set out the general powers of a municipality to create a police force. The sections do not require a municipality to act, and therefore do not create any public rights. There is no public policy right of action for the enforcement of non-public rights, and thus the officers have stated no public policy claim.

### 5. The claim against Chief of Police Jerry Oliver.

■ The City moves to dismiss Count IV of the Complaint, which appears to allege that Oliver and his predecessor, Marty M. Tapscott, have been sued in their personal capacities and are personally liable. The City claims that Oliver is sued only in his official capacity, as a figurehead, and should be dismissed as a defendant.

■ When a complaint does not allege capacity specifically, the court must determine capacity. *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir.1995). There is no bright line test. The allegation that the official was acting according to an official custom or policy tends to argue for official capacity; the allegation that the official violated that policy argues the reverse. *See Id.* A request for compensatory damages tends to argue for personal capacity, as such relief is unavailable in official capacity suits. *Id.*

■ When an official is sued in his personal capacity, it is not enough to show that subordinates of the sued official were the actors; the doctrine of *respondeat superior* has no application to § 1983 cases. *McDonald v. Dunning,* 760 F.Supp. 1156, 1160 (E.D.Va.1991). A personal capacity suit cannot succeed absent proof of some degree of personal involvement in the alleged deprivation of rights. *Id.* In addition, a plaintiff must prove the official's actions proximately caused his damages. *Amato v. City of Richmond,* 875 F.Supp. 1124, 1133 (E.D.Va.1994).

■ The officers are suing Oliver in his personal capacity. While they do allege at some points that the police department used an official police department policy—the "chain of command"—to discriminate against them, they more often argue that their mistreatment violated state policy, such as "teamwork" or "community policing." Most importantly, they are suing for monetary damages, a demand which indicates a personal capacity suit.

■ The remaining question is whether the officers have alleged personal involvement. The answer for notice pleading purposes is that they have, if inartfully. Paragraph 33(a) of the complaint alleges that Oliver actually knew about and, essentially, actively refused to control Carroll's behavior. For purpose of a motion to dismiss or for summary judgment, especially without affidavits from the City, their allegation is sufficient to survive and proceed to trial.

### 6. Punitive damages.

The parties agree that the officers' demand for punitive damages was in error and should be dismissed.

### III.

By consent of the parties, the demand for punitive damages is dismissed and plaintiff Daniel Quinney is dismissed for failure to timely file a Title VII retaliation charge. With respect to Count I, violations of Title VII, the Motion to Dismiss is granted as to the six remaining male plaintiffs for failure to state a claim pursuant to Rule 12(b)(6), and denied as to the two female officers. On Count II, §§ 1981 and 1983, the motion to dismiss is granted as to the claims for free speech and for due process violations of property rights as well as to the charge literally stated, race discrimination. On Count III, violation of the public policy of the Commonwealth of Virginia, the motion to dismiss is granted for failure to state a public

right for which relief may be granted. On Count IV, the claim for damages against Tapscott and Oliver, the City's motion is denied because the claim will be construed as one stated in the officials' personal capacities. In summary, only the two female plaintiffs, Virginia M. Downey and Janice M. Thompson, should remain as plaintiffs in this suit, and they should proceed on only three theories: intentional gender discrimination, sexually hostile work environment and retaliation, all in violation of Title VII.