120 F.3d 476
 74 Fair Empl.Prac.Cas. (BNA) 749,
71 Empl. Prac. Dec. P 44,928
David W. CHILDRESS; Augustus G. Harvey, Iii; Vincent J.
Matassa; Henry W. Mease; Howard S. Noyes;
Daniel G. Quinney; Florian E. Stachura,
Plaintiffs-Appellants,
and
Virginia M. Downey; Janice M. Thompson, Plaintiffs,
v.
CITY OF RICHMOND, VIRGINIA; Jerry A. Oliver, Chief of
Police of the City of Richmond, Virginia, in his official
capacity as Chief of Police of the City of Richmond,
Virginia; Marty M. Tapscott, Defendants-Appellees.
Equal Employment Opportunity Commission, Amicus Curiae.
 No. 96-1585.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 27, 1997.
Decided Aug. 5, 1997.
 
 Opinion Vacated On Sept. 24, 1997.
 ARGUED: Jay Joseph Levit, Levit & Mann, Richmond, VA, for Appellants. Jennifer Susan Goldstein, Equal Employment Opportunity Commission, Washington, DC, for Amicus Curiae. Beverly Agee Burton, Office Of The City Attorney, Richmond, VA, for Appellees. ON BRIEF: C. Gregory Stewart, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Equal Employment Opportunity Commission, Washington, DC, for Amicus Curiae.
 Before HALL and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Affirmed in part, vacated in part, and remanded by published opinion. Judge HALL wrote the opinion, in which Judge MICHAEL and Senior Judge PHILLIPS joined.OPINION
 K.K. HALL, Circuit Judge:
 
 
 1
 Seven white male police officers filed an action alleging various civil rights violations by their employer, the City of Richmond, and their supervisors. The district court held that the officers had failed to state Title VII "hostile environment" claims because the discriminatory actions undergirding such claims were directed at blacks and women, not the officers. A due process claim was dismissed for failure to state a claim, and a First Amendment claim was dismissed on the ground that the speech did not involve matters of public concern. Retaliation claims were dismissed for failure to exhaust administrative remedies, failure to state a claim, or failure to raise a genuine issue as to the motive behind the alleged discrimination.
 
 
 2
 We affirm the dismissal of the due process and First Amendment claims. However, we hold that the officers may state hostile environment claims under Title VII for discrimination directed at black and female officers, and, accordingly, we vacate the judgment dismissing those claims and remand for further proceedings. We also vacate the judgment dismissing the retaliation claims and remand.
 
 
 3
 * A
 
 
 4
 The officers allege that their immediate supervisor, Lt. Arthur Carroll, a white male, made a number of disparaging remarks to and about female and black members of the police force over a two-month period beginning in November 1993. Some of these comments were made in the presence of the black and female officers, while others were made only in the presence of the white officers.
 
 
 5
 The officers signed a letter to their precinct captain complaining of Lt. Carroll's profanity and outbursts of temper. Although the letter did not mention the specific disparaging remarks, one of the signatories orally conveyed the officers' concerns on that point when he delivered the letter. An investigation was conducted, but no action was taken against Lt. Carroll. The officers were, however, threatened with "adverse consequences" during the investigation.
 
 
 6
 During the following March and April, each of the officers filed a hostile-environment charge (race and sex) with the EEOC, and each received a right-to-sue letter. Thereafter, they allege that they were subjected to a series of retaliatory actions, including shift changes, transfers, and unfavorable performance evaluations. Each officer (except Quinney) then filed a second EEOC charge, this time claiming retaliation for their initial EEOC charge and related complaints about Carroll. Again, each received a right-to-sue letter.
 
 B
 
 7
 On August 11, 1995, the officers filed their complaint in the district court against the City and the Chief of Police in his official capacity. They sought relief under Title VII (42 U.S.C. §§ 2000e-2(a)(1) & 3(a)), § 1983, and state law. The officers contend that Lt. Carroll's remarks created both a sexually and racially hostile environment on the force that acted to destroy the necessary sense of "teamwork" between officers of different sexes and races, and that this resultant loss of teamwork raised the possibility that officers in one group might be reluctant to assist officers in another group during the performance of their duties on the streets.
 
 
 8
 On November 21, 1995, the district court dismissed the hostile environment claims on the ground that Title VII created no such cause of action for persons (white males) complaining of discrimination and harassment directed at others (blacks and females). The court dismissed the § 1983 claims under Rule 12(b)(6) as well. To the extent that the officers relied on a theory that they were deprived of a property interest in "teamwork" without due process, the court found no support in the case law. As for the officers' theory that the retaliation violated their free-speech rights, the court held that the speech at issue (the letter to Captain Hicks) did not involve a matter of public concern.
 
 
 9
 After the officers filed an amended complaint that refined their retaliation claims, the court issued its final order on March 21, 1996. With regard to the officers' "opposition clause" claims--that the officers were retaliated against on the basis of their opposition to Lt. Carroll's discriminatory acts against the female officers--the court dismissed for lack of jurisdiction because such claims were not expressly included in the officers' second EEOC charges and, therefore, the officers had failed to exhaust their administrative remedies. Quinney's opposition-clause claims were dismissed because he had failed to file an EEOC charge complaining of the retaliation.
 
 
 10
 The participation clause claims--that the officers were retaliated against for "participating in" an EEOC proceeding--were reevaluated and dismissed on alternative grounds. First, the claims were dismissed under Rule 12(b)(6) as "spurious" because the claims concerned "favorable treatment by the employer" and were thus outside even the seemingly absolute privilege of § 2000e-3(a). Second, characterizing the question as a close one, the court proceeded to consider the participation-clause claims under summary judgment standards and dismissed the claims because the officers had failed to create a genuine issue that the EEOC charge was in fact the proximate cause of the alleged retaliation by the City.[1]
 
 The seven officers appeal.[2]
 II
 
 11
 * The core premise of the district court's orders is that discrimination directed against one group (blacks or females) is discrimination in favor of the other group (white men):
 
 
 12
 Title VII permits no claim for hostile environment based on same-sex harassment where there is neither an allegation of quid pro quo nor some sexual component of the harassing behavior.... To the extent that the male officers attempt to assert the rights of other persons, female officers, they clearly state no claim. To the extent they assert a general Title VII right to be free of tensions caused by special treatment in their favor, the male officers' complaints should be dismissed because they attempt to create a new Title VII right out of whole cloth. Any way their complaints are viewed, the male officers are attempting to recover for violations of other peoples' civil rights, which they have no standing to do. It should be noted that the male officers do not allege that the lack of "teamwork" rises to the level of having women create a hostile working environment against them--rather, the hostility alleged is the hostility of the supervisor toward their compatriots.
 
 
 13
 Childress v. City of Richmond, Virginia, 907 F.Supp. 934, 939-40 (E.D.Va.1995) ("Memorandum Opinion").[3] The racially hostile environment claims were dismissed on the same reasoning. Id. at 939. The court's premise is incorrect.
 
 
 14
 The source of the officers' Title VII hostile-environment claims is found in 42 U.S.C.A. § 2000e-2(a)(1) (West 1994), which provides that it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Sexual or racial harassment that is "sufficiently severe or pervasive[enough to] ... create an abusive working environment" is within the proscriptive ambit of the statute. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (sexual harassment); Davis v. Monsanto Chemical Co., 858 F.2d 345 (6th Cir.1988) (racial harassment). The allegations regarding Lt. Carroll's remarks and the City's refusal to remedy the situation are sufficient to make out a violation of § 2000e-2(a)(1) under Meritor,[4] at least for purposes of a motion to dismiss. See Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.1969) ("A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.").
 
 
 15
 The problem is standing. Even if we assume, as we do at this point, that the City has discriminated against its black and female officers in the "terms, conditions, privileges" of their employment, we need to determine whether the plaintiffs are "persons aggrieved" and, if so, whether they have suffered an injury that would entitle them to bring this action.
 
 B
 
 16
 As part of its enforcement scheme, Congress conferred a private right of action on "the person claiming to be aggrieved ... by the alleged unlawful employment practice." 42 U.S.C.A. § 2000e-5(f)(1) (West 1994). Because the purposes and relevant language in Title VII and Title VIII are so similar, we believe we should begin by examining the Court's reasoning in Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), to determine whether the Supreme Court's recognition of associational rights under Title VIII militates in favor of conferring a comparable discriminatory-environment cause of action on men to complain about discrimination directed at women, or on white persons to complain of similar treatment of blacks.
 
 C
 
 17
 In Trafficante, white tenants sued the owners of their apartment complex under Title VIII for the owners' alleged discrimination in preventing blacks from renting units in the same complex. The injury claimed was that of "the loss of important benefits from interracial associations." Id. at 210, 93 S.Ct. at 367. The Court held that the injury alleged brought them within the broad ambit of "person[s] aggrieved," as that term was defined in § 810(a) of Title VIII of the Civil Rights Act of 1968: "Any person who claims to have been injured by a discriminatory housing practice."[5] In so holding, the Court espoused the view of an appeals court that the phrase "by a person claiming to be aggrieved," as used in the Civil Rights Act of 1964 (the same statute involved in the officers' suit), "showed 'a congressional intention to define standing as broadly as is permitted by Article III of the Constitution.' " Trafficante, 409 U.S. at 209, 93 S.Ct. at 367 (quoting Hackett v. McGuire Bros., Inc., 445 F.2d 442, 446 (3d Cir.1971)). See also Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp., 28 F.3d 1268, 1278 (D.C.Cir.1994) (Title VII is the type of statute that "confer[s] a cause of action upon everyone who meets the Article III requirements--that is, anyone 'genuinely injured by conduct that violates someone's ... rights' under the statute.") (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 1609, 60 L.Ed.2d 66 (1979)). We now take this construction of the term "person aggrieved," expressly applied by the Supreme Court to Title VIII cases and implicitly approved for Title VII cases, and apply it to the officers' case.
 
 
 18
 Trafficante 's construction of the term "person aggrieved" and the extension of Article III standing to the victims of indirect discrimination has been adopted by every court of appeals that has considered the issue of a white person's standing to sue under Title VII for associational or hostile environment claims flowing from discriminatory conduct directed at black persons. See Stewart v. Hannon, 675 F.2d 846, 848-50 (7th Cir.1982) (exclusion of blacks from school principal positions); EEOC v. Mississippi College, 626 F.2d 477, 481-83 (5th Cir.1980) (failure to recruit and hire black faculty members); EEOC v. Bailey Co., Inc., 563 F.2d 439, 452-54 (6th Cir.1977) (failure to recruit and hire blacks); Waters v. Heublein, Inc., 547 F.2d 466, 469-70 (9th Cir.1976) (lower pay to blacks); see also BMC Marketing, 28 F.3d at 1277-78 (fair-employment advocacy organization has a cause of action under Title VII if Article III's injury-in-fact requirement is met).
 
 
 19
 The reasons given for transposing Trafficante 's broad standing rule on Title VII cases include the similar language of the 1964 and 1968 statutes,[6] the important enforcement role conferred on private individuals in both statutory schemes, the citation of Hackett in Trafficante, the identity of the purpose of each statute, and the consistent interpretation by the EEOC. We subscribe to the analysis of each of these opinions, and, as additional support for our decision, we note the failure of Congress to overrule these decisions in the Civil Rights Act of 1991, in which fairly extensive changes to Title VII were made.[7] See Cannon v. Univ. of Chicago, 441 U.S. 677, 699, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979) ("[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them.").
 
 
 20
 We hold that white men have standing to assert hostile environment claims under Title VII when the discriminatory conduct is directed at blacks or females. We believe that Trafficante compels this result.[8]
 
 III
 
 21
 * The statute proscribing retaliation against persons complaining of unlawful discrimination comprises two prongs, the"opposition clause" and the "participation clause." The section provides that "it shall be an unlawful employment practice for an employer to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). The officers allege retaliation flowing from two sources: the in-house complaints, including the initial letter to Captain Hicks, and the charges filed with EEOC.
 
 
 22
 The district court acknowledged that there was evidence of retaliation in the record, but it nevertheless dismissed both claims. Initially, the dismissal flowed from the threshold ruling that the plaintiffs had failed to even state a claim for race or sex discrimination. After the complaint was amended, the district court dismissed the opposition clause claims on a different basis. The district court noted that there was evidence in the record to make out a genuine issue as to whether the plaintiffs were retaliated against for assisting the females by opposing Lt. Carroll's behavior. 919 F.Supp. at 220. However, because the officers' second EEOC charges did not mention their prefiling opposition as a motivation for the alleged retaliation, they had failed to exhaust their administrative remedies.
 
 
 23
 Recognizing that participation claims are usually absolute--no matter what the merits of the EEOC claim itself, there can be no retaliation for filing it--the district court applied a "sense of reason" rule and held that "where an employee charges not wrongdoing but favoritism in his favor," his complaint is "spurious." 919 F.Supp. at 219. Acknowledging that the issue was a close one, the court went on to discuss the participation-clause claims under a summary judgment standard and found that there was evidence that the City retaliated for the initial letter, that Carroll displayed animus towards blacks and women, and that the environment was hostile to blacks and women. But, the court concluded, "the record does not show that the white male plaintiffs suffered discrimination for their gender or race, nor does it show that the white males' EEOC charge to that effect was the motivation for retaliation." Id. at 220. Accordingly, the participation clause claims were dismissed.
 
 B
 
 24
 Our discussion in Part II disposes of the appeal of the Rule 12(b)(6) dismissal of the participation-clause claims; the claims are certainly not "spurious." With regard to the alternative basis for the dismissal, the City argues that there had been no retaliation because there had been no showing of adverse action against each plaintiff. The record refutes this assertion. At the very least, the plaintiffs have produced evidence that raises a genuine issue as to whether they have been transferred to new and unfavorable shifts or were given lower performance ratings than they deserved.
 
 
 25
 As the lower court noted, the record does show that the City retaliated against them "for [their] claim that Carroll displayed animus to blacks and women." Id. at 220. Given this evidence of retaliation, it cannot be said at this point that the EEOC charges did not, at least in part, motivate the City actors. Therefore, we vacate the district court's grant of summary judgment to the City defendants on the participation-clause claims.
 
 C
 
 26
 "Opposition clause" claims differ in several respects from "participation-clause" claims. First, the claim must be exhausted by the filing of an EEOC claim raising the opposition claim, and the scope of such a claim in a judicial complaint is limited to the allegations contained in an EEOC charge. Second, only opposition to "practices made unlawful [by Title VII]" is protected. In its first opinion, the court dismissed these claims because the male plaintiffs could not have a "reasonable belief" in the validity of the hostile environment claims. 907 F.Supp. at 940 (citing Mayo v. Kiwest Corp., 898 F.Supp. 335, 337 (E.D.Va.1995)[9]).
 
 
 27
 After the complaint was amended, the district court dismissed the opposition claims because the officers' second EEOC charges linked specific retaliatory measures solely to each officer's "filing of an EEOC charge." The failure to specifically mention their opposition clause theory--that the City also retaliated because of the plaintiffs' assistance to the female officers--led the district court to rule that it had no jurisdiction to consider these unexhausted claims. 919 F.Supp. at 219-20. The law, however, is flexible enough to permit the court to exercise jurisdiction over these claims.
 
 
 28
 "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Evans v. Technologies Applications & Service Co., 80 F.3d 954, 963 (4th Cir.1996); see also Nealon, 958 F.2d at 590 ("The scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the [EEOC] charge."). Here, each of the second EEOC charges could be fairly read to include a claim that the charging officer was being treated unfairly for "opposing" the practices that prompted that officer's initial hostile environment charge. Indeed, the affidavits attached to the second set of EEOC charges clearly convey a theory that the initial EEOC charges (the participation) were fused to the earlier in-house complaints as the source of the alleged retaliation. The EEOC's investigation of retaliation would necessarily encompass "opposition" and "participation" motives for the adverse employment actions allegedly taken in the wake of the officers' complaints. Accordingly, we vacate that portion of the district court's order dismissing the retaliation claims and remand for further proceedings.[10]
 
 IV
 
 29
 * The plaintiffs also claimed that the adverse employment actions taken in response to their complaints about Lt. Carroll violated their First Amendment free-speech rights, as made actionable under 42 U.S.C. § 1983. The district court dismissed these claims under Fed.R.Civ.P. 12(b)(6) on the ground that the City had no "official policy or custom" of discrimination that would subject it to § 1983 liability and, further, that the officers' complaints involved intramural rather than public concerns. DiMeglio v. Haines, 45 F.3d 790 (4th Cir.1995). We affirm the dismissal of these claims on the reasoning of the district court. 907 F.Supp. at 941-42.
 
 B
 
 30
 The final issue involves the officers' claim that they have a property right in "teamwork" and that the deprivation thereof violated their right to due process. Finding no support in the law for such a claim, the district court dismissed the claim under Fed.R.Civ.P. 12(b)(6). We again affirm on the court's reasoning. District court's 1st op. at 10-11.
 
 V
 
 31
 The dismissal of the § 1983 claims is affirmed. The dismissals of the Title VII hostile environment and retaliation claims are vacated, and these claims are remanded for further proceedings.
 
 
 32
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED
 
 
 
 [1]
 The district court dismissed Quinney's participation-clause retaliation claim on the ground that he had failed to file a second EEOC charge raising such claim. Under Nealon v. Stone, 958 F.2d 584, 590 (4th Cir.1992), however, a second EEOC charge (claiming retaliation for filing a first charge of discrimination) is not a jurisdictional prerequisite to filing a suit asserting a Title VII participation-clause claim. We will therefore consider Quinney's participation-clause claim as having been dismissed under the same rationale as the district court employed in dismissing the corresponding claims of the other officers
 
 
 [2]
 Two female officers were plaintiffs in the suit but settled prior to final judgment; their claims were dismissed. The male officers do not appeal the dismissal of their pendent state law claims
 
 
 [3]
 Citations herein to this opinion will be "district court's 1st op. at __," and citations to the court's March 21, 1996, memorandum opinion will be "district court's 2d op. at __."
 
 
 [4]
 The district court's reliance on the same-sex sexual harassment cases claims is misplaced. In McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191 (4th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996) (which was decided after the district court dismissed the officers' hostile environment claims, but which is consistent with the cases relied on by the district court), we held that same-sex harassment did not amount to a violation of Title VII because the harassment was not "because of" the plaintiff's (or, we add, anyone else's) sex. McWilliams had no Title VII claim simply because an essential predicate, a violation of the statute, was absent
 
 
 [5]
 Pub.L. 90-284, Title VIII, § 810(a). This definition is now found at 42 U.S.C. § 3602(I)(1) (Pub.L. 100-430, § 5, Sept. 13, 1988, 102 Stat. 1619)
 
 
 [6]
 The definition of proscribed conduct in Title VII differs in one minor respect from that in Title VIII. In the employment field, 42 U.S.C. § 2000e-2(a)(1) makes it illegal to discriminate against any individual "because of such individual's race ... [or] sex ...." (emphasis added), whereas the housing statute, 42 U.S.C. § 3604(a)-(b), makes it unlawful "[t]o refuse to sell or rent ... to any person because of race ... [or] sex ...." or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of race ... [or] sex...." Because the only reasonable reading of the latter provision is a prohibition against discrimination "against any person because of that person's race or sex," we attach no significance to this difference in wording
 
 
 [7]
 See Pub.L. 102-166, Title I, Nov. 21., 1991, 105 Stat. 1074-76
 
 
 [8]
 In holding that Title VII permits white males to bring hostile environment claims, we do not express an opinion on whether the injury alleged--described by the officers as a "loss of teamwork"--is one that would satisfy Article III's requirement of an injury "fairly traceable" to the challenged action. Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984). We also express no opinion as to whether the alleged harassment was "sufficiently severe or pervasive" enough to constitute a hostile environment under Meritor. We leave these questions for the district court's determination
 
 
 [9]
 Subsequently affirmed, 94 F.3d 641 (4th Cir.1996) (unpublished)
 
 
 [10]
 Quinney did not file a retaliation charge with the EEOC. However, in his only EEOC charge, he charged that he had"been subjected to harassment" and "removed from [his] normal working station" because of his involvement in the complaints against Lt. Carroll. EEOC, as amicus curiae, asserts that the other officers' initial charges contain similar references to retaliatory measures taken in response to their opposition to Lt. Carroll's remarks and that their "opposition claims were, in fact, within the scope of the EEOC's investigation that followed the charges of discrimination." EEOC's brief at 27. Retaliation may well be a claim that, under Evans, could be deemed as having been "developed by reasonable investigation of the original complaint." We vacate the order dismissing Quinney's opposition-clause retaliation claims and remand for further consideration of the exhaustion issue in light of Evans