**Frances D. BURNS, Plaintiff,**

**v.**

**AAF–McQUAY, INC., Defendant.**

**No. Civ. A. 94–0049–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Sept. 24, 1997.

Donald Douglas Litten, Stephanie Rader Sipe, Litten & Sipe, Harrisonburg, VA, for Plaintiff.

Robert Craig Wood, Bruce M. Steen, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

### I. Background

#### A. Procedural Background

Plaintiff Frances D. Burns ("Burns") filed a complaint against defendant AAF–McQuay, Inc. ("McQuay") on July 14, 1994 alleging violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Ms. Burns claimed that in transferring her to the company's switchboard from her position as secretary to the Human Resource manager, McQuay violated the ADEA by demoting her and constructively discharging her because of her age. (Complaint, ¶ 10)

Following discovery, McQuay filed a motion for summary judgment, arguing that Ms. Burns failed to establish genuine issues of material fact either that she had been demoted to the switchboard because of her age, or that her March 4, 1994 resignation constituted a constructive discharge. In his Report and Recommendation, "[t]he magistrate judge found a genuine issue of material fact as to whether [McQuay]'s asserted reasons for the demotion were pretextual" under the ADEA. *Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 730 (4th Cir.1996). This court, however, declined to adopt the Report and Recommendation and by Order and Memorandum Opinion October 6, 1995, granted summary judgment in favor of McQuay on both claims.

Plaintiff appealed this court's decision to the United States Court of Appeals for the Fourth Circuit. On September 23, 1996, the Fourth Circuit affirmed this court's ruling as to the constructive discharge claim but reversed as to the demotion claim.

Ms. Burns filed the instant motion for leave to amend complaint on November 5, 1996. While this court initially ordered McQuay to respond to the pending motion on·or before January 3, 1997, plaintiff filed a petition for a writ of *certiorari* to the United States Supreme Court before such response by defendant was due. This court stayed proceedings pending resolution of plaintiff's *certiorari* petition by its January 3, 1997 Order.· On March 17, 1997, the Supreme Court denied plaintiff's *certiorari* petition. The case is now before this court on remand for proceedings on the merits of the ADEA demotion claim.

Ms. Burns moves for leave to amend her original complaint in response to *Crawford v. Medina General Hospital,* 96 F.3d 830 (6th Cir.1996) which approved the application of "hostile work environment" theory of Title VII, 42 U.S.C. § 2000e *et seq.,* to ADEA action. Ms. Burns seeks to amend her complaint to allege hostile work environment liability against McQuay (COUNT II) and to allege Virginia law causes of action against the defendant for intentional infliction of emotional distress (COUNT III) and negligent infliction of emotional distress (COUNT IV) owing to her demotion. (Plaintiff's Proposed Amended Complaint at 4, ¶¶ 33–38)

#### B. Factual Background

The Fourth Circuit quoted at length from this court's Memorandum Opinion of October 6, 1995 and the findings of fact therein. Because those factual findings were made pursuant to McQuay's summary judgment motion, this court stated them in the light most favorable to Ms. Burns as follows:

> The plaintiff, Frances D. Burns, was employed by the defendant, AAF–McQuay, Inc., for approximately sixteen years at the defendant's facility in Staunton, Virginia. The plaintiff was the secretary to the human resources manager until her reassignment to the position of switchboard operator. Approximately one month after her reassignment, the plaintiff resigned her employment with the defendant. From 1978 to 1991, the plaintiff was supervised by Chuck Welsh (Welsh). From 1991 to 1992, the plaintiff was supervised by Gary Alderson (Alderson). In 1992, Stephen B. Horney (Horney) became the human resources manager and the plaintiff's super-

visor. Horney was the plaintiff's supervisor at all times relevant to this matter. The plaintiff claims that supervisors Welsh and Alderson consistently evaluated the plaintiff's performance as "commendable" or "excellent." The plaintiff claims that she maintained good working relationships with both Welsh and Alderson and that neither supervisor criticized her work performance. Alderson testified that the plaintiff was an excellent employee and that her job was definitely not in jeopardy because of her work performance.

The defendant claims, however, that Horney became dissatisfied with the plaintiff's performance.

In February 1994, Horney transferred the plaintiff to the position of switchboard operator and replaced the plaintiff with Donna Brown, then thirty-nine years of age. On March 4, 1994, the plaintiff resigned from the company. At the time of her transfer, the plaintiff was sixty-five years of age, and Horney was forty-six years of age.

*Burns,* 96 F.3d at 730–731 (quoting Memorandum Opinion at 2–4).

## II. Standard for Granting Motion to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend a complaint at this late date "only by leave of court." Fed. R Civ. P. 15(a). "Leave shall be freely given when justice so requires." *Id.* Disposition of a motion for leave to amend a pleading is within the sound discretion of the district court. *Gambelli v. U.S.,* 904 F.Supp. 494 (E.D.Va.), *aff'd* 87 F.3d 1308 (4th Cir.1995).

Generally, Fed.R.Civ.P. 15(a) is read liberally in favor of the free allowance of amendments. *Id.* The liberal construction given the Rule owes to the general desire of Federal courts not to avoid decisions on the merits on the basis of mere technicalities of pleading. *See Metropolitan Liquor Co. v. Heublein, Inc.,* 50 F.R.D. 73 (E.D.Wisc.1970). Such a motion may be denied, however, if the court finds "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant ...

undue prejudice to the opposing party by virtue of allowance of amendment, [or] futility of the amendment...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Ward Elecs. Serv., Inc. v. First Com. Bank,* 819 F.2d 496, 497 (4th Cir.1987), *aff'd in part and rev'd in part after remand,* 856 F.2d 188 (4th Cir.1988).

## III. Proposed Intentional and Negligent Infliction of Emotional Distress Claims

Virginia law has recognized causes of action for intentional and negligent infliction of emotional distress for a generation. *See Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145 (1974) (intentional infliction of emotional distress first recognized); *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973) (negligent infliction of emotional distress first recognized). Ms. Burns presents no justifiable excuse for why she waited twenty-eight months from the date she filed her original complaint to attempt now to plead as pendent claims causes of action that the Commonwealth has recognized for over twenty years. As a general pattern, courts look with disfavor on attempts to amend complaints so that, after amendment, they state causes of action cognizable at the time of the original pleading. *See, e.g., Yager v. Carey,* 910 F.Supp. 704, 732 (D.D.C.1995) (denying motion to amend complaint alleging violations of ERISA, 29 U.S.C. §§ 1101 *et seq.* and the Labor—Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 101 *et seq.* with common law breach of contract claim).

In a factual context analogous to that in the instant case, the Fourth Circuit held in *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.,* 43 F.3d 922 (4th Cir. 1995) that denying leave to amend to add a fraud counterclaim in a trademark infringement action was not an abuse of discretion, where the information necessary for the counterclaim was within the alleged infringer's possession before the original answer was filed, but the alleged infringer waited until the closing days of discovery before filing the motion to amend. *Accord, Johnsen v. Rogers,* 551 F.Supp. 281, 284 (C.D.Cal.

1982) (leave to amend securities fraud complaint to add racketeering claims denied when plaintiffs were aware of all facts asserted in support of the racketeering claims prior to filing the original complaint). Here, the Virginia claims plaintiff seeks to amend to her original complaint existed and could have been pled in 1994. Like the facts in the alleged infringer's possession originally in *Lone Star*, here the facts that would have supported Virginia causes of action were in Ms. Burns' possession three years ago. Clearly, plaintiff's delay here qualifies as "undue" under Rule 15(a) and, thus, her motion for leave to amend should be denied.[1]

■ "Undue delay" alone can serve as a sufficient basis for denying a motion for leave to amend a complaint. *See King v. King*, 922 F.Supp. 700 (D.N.H.), *aff'd* 104 F.3d 348 (1st Cir.1996) (unpublished). Moreover, Rule 15(a) caselaw especially counsels against granting such a motion when the moving party's delay in seeking the amendment would tend to prejudice the non-movant. *See, e.g., Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir.1990); *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1517–18 (1st Cir.1989) (when discovery has taken place without reference to a new theory of liability sought to be amended to a complaint, non-movant prejudiced).

Here, defendant would be prejudiced by the additional discovery and other litigation costs associated with Burns' "new" State law emotional distress claims. For example, defendant would have to depose plaintiff and other witnesses, including experts, on the severity of plaintiff's asserted emotional distress. McQuay avers that in this case's earlier discovery, it understandably did not fully explore this issue because Ms. Burns had not pled the Virginia causes of action she now seeks to amend to her complaint. Prejudice to a non-movant is greater when a tardy motion to amend will necessitate the re-opening of discovery. *See, e.g., Block v. First Blood Associates*, 988 F.2d 344 (2nd Cir. 1993); *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400 (E.D.N.Y.1995); *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463 (D.N.J.1990). McQuay's prejudice argument is well-taken; coupled with the untimeliness problem discussed *infra*, it counsels against granting plaintiff's motion for leave to amend under Rule 15(a).

Thus, the court will deny the plaintiff's motion for leave to amend her complaint to plead Virginia causes of action for intentional and negligent infliction of emotional distress.

### IV. Proposed "Hostile Environment" ADEA Cause of Action

■ Ms. Burns' argument in favor of granting leave to amend her complaint to plead the legitimately new Sixth Circuit cause of action is much stronger than that concerning the State law claims. After the Sixth Circuit issued its novel holding in *Crawford v. Medina General Hospital*, 96 F.3d 830 (6th Cir.1996) that Title VII's hostile work environment doctrine applies to an ADEA cause of action, plaintiff acted promptly and without delay, filing the instant motion less than two months after the case was decided. Thus, Rule 15(a)'s related "undue delay" and "prejudice" rationales for denying leave to amend carry significantly less weight with respect to this claim.

McQuay, however, argues strenuously, first, that plaintiff's proposed amendment is "futile" and, therefore, should be denied under Rule 15(a) caselaw. Defendant maintains that the legal standard required of hostile environment claims under Title VII (and by implication to those under the ADEA) is that the alleged harassment be "sufficiently severe or pervasive to alter the conditions of

---

1. The court is unpersuaded by plaintiff's argument that pendent Virginia law claims for intentional infliction of emotional distress and negligent infliction of emotional distress could not have been pled at the time of Ms. Burns' original complaint. To be sure, courts have held that "[d]amages for mental anguish, emotional distress and injury to reputation are not recoverable *under* the ADEA." *Higdon v. Concast Cable Communications, Inc.*, 708 F.Supp. 1584 (N.D.Ala. 1987) (emphasis added) (citing *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435 (11th Cir. 1985)); *Dean v. American Security Insurance Co.*, 559 F.2d 1036 (5th Cir.1977), *cert. denied*, 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed.2d 767 (1978). Ms. Burns' claimed emotional distress damages, while not recoverable "under" the ADEA, 29 U.S.C. § 626, potentially were recoverable in 1994 "under" pendent State law infliction of emotional distress causes of action.

employment and create an abusive working environment." *See, e.g., White v. Federal Express Corp.,* 939 F.2d 157, 160 (4th Cir. 1991) (Title VII hostile environment standard in racial discrimination claim). *Crawford* likewise embraces the "objectively intimidating, hostile, or offensive work environment." 96 F.3d at 834–35. In essence, McQuay argues that leave to amend to plead a cause of action under *Crawford* is futile because this court in granting defendant's motion for summary judgment and the Fourth Circuit in affirming it, already held that, as a matter of law, plaintiff's "proffered examples of intolerability" were not harsh enough to have amounted to constructive discharge and that given the similarity among the different actions' "intolerability" standards,[2] the new ADEA theory similarly falls short of the applicable legal standard.

Whether the defendant is correct about the similarity of the "intolerability" standards or merely is engaging in semantic sleight of hand, however, McQuay misapplies the claimed similarity to the instant Rule 15(a) motion. A motion to amend a complaint is not held to the summary judgment standard defendant implicitly invokes by arguing the sufficiency of the evidence, but rather only to that of a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *See, e.g., Brooks v. Bank of Boulder,* 911 F.Supp. 470 (D.Colo.1996); *DeLuca v. Winer Industries, Inc.,* 857 F.Supp. 606, 608 (N.D.Ill.1994); *Bellanger v. Health Plan of Nevada, Inc.,* 814 F.Supp. 914 (D.Nev.1992). As the Fourth Circuit stated in *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.1980), "Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment."

Therefore, the inquiry turns to whether, under the standard applicable to a Fed. R.Civ.P. 12(b)(6) motion to dismiss, the proposed amendment is futile because of substantive considerations. That is, is the hostile environment claim recognized by the Sixth Circuit in *Crawford* a "claim upon which relief can be granted" in the Fourth Circuit?

To be sure, the Sixth Circuit is the only Federal Circuit to have recognized a hostile environment claim in the ADEA context.[3] While the authority of a sister circuit is persuasive, this court must nonetheless look first to the law of its circuit for guidance and precedential value. In doing so, the court finds no case decided by this circuit which follows the rationale of *Crawford.* The Fourth Circuit did hold recently in *Childress v. City of Richmond, Va.,* 120 F.3d 476 (4th Cir.1997) that the district court erred in dismissing white police officers' Title VII hostile environment claims for racial discrimination that had been aimed at black co-workers, rather than at them. The court borrowed from authority[4] interpreting Title VIII, an analogous anti-discrimination statute dealing with public housing, holding that such authority "compels" the conclusion that the officers made out a hostile environment claim upon which relief can be granted under Title VII. *Childress* at 481.

Thus, the case might be read as standing for the broad proposition that civil rights plaintiffs may apply theories of liability and rules of standing as between the related Federal anti-discrimination statutes. In *dicta, Childress* contained, after all, the statement that "the similar language of the [anti-discrimination] statutes, the important enforcement role conferred on private individuals in both statutory schemes, . . . [and] the identity of the purpose of each statute . . ." supports appropriating causes of action and the-

2. A plaintiff must prove that his working conditions were made "deliberately" "intolerable" by his employer to establish constructive discharge under the ADEA. *See Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985).

3. The *Crawford* opinion acknowledges as much, stating that "no circuit has as yet applied the hostile-environment doctrine in an ADEA action. . . ." 96 F.3d at 834.

4. Specifically, the court looked to *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) which held that white persons possess standing to sue as "person[s] aggrieved" under § 810(a) of Title VIII of the Civil Rights Act of 1968 (definition now found at 42 U.S.C. § 3602(I)(1)) for injury by a discriminatory housing practice.

ories of liability from one anti-discrimination statute into another. *Id.*

While the *Childress dictum,* quoted *supra,* might be read as generally analogous to the Sixth Circuit's thinking in *Crawford,* the *Childress* holding is altogether distinguishable. Again, the court drew from cases interpreting Title VIII (cases dealing almost exclusively with racial discrimination) to permit a Title VII hostile work environment action by white officers alleging racial discrimination against black co-workers. The strong factual dissimilarity between *Childress* and the instant case distinguishes the two in such significant ways (*i.e.,* claims based on race, claims asserted by one group on behalf of another, *etc.*) that this court finds *Childress* of little value in trying to determine if this circuit would follow the Sixth Circuit *Crawford* analysis. The court then concludes that when—and if—the Fourth Circuit adopts *Crawford* and its reasoning,[5] this court will abide by the law in all other circuits indicating that "no circuit has as yet applied the hostile-environment doctrine in an ADEA action. . . ." *Crawford,* 96 F.3d at 834.

Ms. Burns' proposed amended complaint indeed does plead the elements of an ADEA hostile environment claim as enumerated in *Crawford.*[6] She alleges that she was discriminated against, singled out for adverse treatment, subjected to unwelcome and unwarranted harassment and intimidation, and unjustifiably demoted to an entry level position, all due to her age, creating a "hostile work environment which unreasonably interfered with [her] work performance in violation of ADEA." (Proposed Amended Complaint at ¶¶ 10 and 34) For purposes of a Rule 12(b)(6) motion (again, the standard that applies to a motion to amend), all factual allegations in the plaintiff's complaint must be accepted as true. *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217–18 (4th Cir.1994).

In the considered opinion of this court, however, *Crawford,* even when coupled with an expansive reading of *Childress,* simply is not the law in the Fourth Circuit. To survive a Fed.R.Civ.P. 12(b)(6) motion or its equivalent, a plaintiff must state a claim upon which relief "can" (not could) be granted. Federal anti-discrimination laws, certainly including Title VII and the ADEA, are separate and distinct statutory schemes with unique remedial doctrines and enforcement provisions applicable to each. *See Fellows v. Medford Corp.,* 431 F.Supp. 199 (D.Ore. 1977). That the Sixth Circuit now has blurred the distinctions between them (a tendency apparently embraced by the *Childress* court in the distinguishable Title VIII context), does not impel this court to do the same.

Because Fourth Circuit law does not recognize the applicability of Title VII's hostile work environment doctrine in age discrimination actions under the ADEA, this court will deny plaintiff leave to amend her complaint. Ms. Burns' proposed hostile work environment ADEA cause of action is not a "claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6).

## V. Conclusion

For the reasons stated herein, the court shall, and hereby does, deny plaintiff's motion for leave to amend her complaint to add the pendent Virginia law causes of action of intentional and negligent infliction of emotional distress. As well, the court shall, and hereby does, deny plaintiff's same motion with respect to the proposed hostile environment cause of action under the ADEA.

---

**5.** Of course, Congress may choose to amend the ADEA to incorporate Title VII's hostile work environment theory into the body of the statute.

**6.** The elements for an ADEA hostile work environment claim are that the "harassment had the

effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or abusive work environment." *Crawford,* 96 F.3d at 834.